[Nos. 10574-4-I; 10575-2-I.   Division One.   February 6, 1984.]

*In the Matter of the Welfare of*
SHILOW OTT, ET AL.

WILLARD OTT, *Appellant,* v. THE STATE OF
WASHINGTON, *Respondent.*

*Brian J. Linn,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Larry Watters, Assistant,* for respondent.

*John W. Schedler, Lee, Smart, Cook & Martin,* and *Kathy Hershey,* as guardians ad litem.

DURHAM, C.J.—Willard Ott appeals from the order terminating his parental rights to his two daughters, Shilow

and April Ott. He claims that the order is not supported by substantial evidence, and that the trial court erred in denying his motions for a continuance and to reopen the case. We find no error and affirm the judgment.

Willard Ott is the natural father of Shilow and April Ott. In December of 1977, the children's mother apparently abandoned April and Shilow to the custody of Mr. Ott. In January of 1978, a social worker from Child Protective Services visited the Ott home, on a referral from the Office of Public Assistance. When the social worker commented about Mr. Ott's rough treatment of one of the children, Mr. Ott threatened the social worker, who then left the apartment. In subsequent meetings, Mr. Ott declined the homemaker and day care services offered by the State.

In March of 1978, when the children were 2 and 4 years old, a neighbor reported to the State that Mr. Ott had been leaving the children unsupervised. When a social worker called to investigate, Mr. Ott refused to let her in, and chased her into the apartment manager's office, where she called the police. When the police arrived, they arrested Mr. Ott on an outstanding traffic warrant, and the children were placed in a receiving home.

On April 10, 1978, the State filed a petition for dependency for both children, pursuant to RCW 13.34.130. After various delays, a dependency hearing was held on November 13, 1978, and the court entered an order of dependency based upon stipulated facts. The order also required Mr. Ott to undergo psychiatric counseling and to obtain appropriate housing for the children. The original dependency order was reviewed and upheld five times until, on February 6, 1980, the State filed a petition for termination of the parent–child relationship. After hearing evidence, the court dismissed the petition for termination but continued foster care of the children on condition that Mr. Ott obtain psychiatric treatment, regular employment, and stable housing. Over the next year, five more dependency review hearings occurred. In each review, the court upheld the dependency order because of Mr. Ott's failure to com-

ply with the stated conditions.

On March 2, 1981, the State filed the petition for termination of the parent–child relationship that is the basis of this appeal. At the hearing in May 1981, the State called two psychiatrists, two psychologists, two social workers, and the guardians ad litem for Mr. Ott and the children. There was testimony that, when the girls were taken into a receiving home, they were extremely dirty, underweight, and unresponsive. A Headstart teacher testified that Shilow, age 5, was not aware of words or colors or the names of things. In addition, a psychologist testified that the children were "not anywhere near where they should be in terms of their emotional development". On the third day of the termination hearing, Mr. Ott himself testified concerning his income and living arrangements. Following his testimony, the court adjourned for the day. The next morning, Mr. Ott's counsel informed the court that Mr. Ott "had been up all night reviewing his notes," and wished to testify further but was too upset to come to court that day. The court agreed to wait until afternoon for Mr. Ott's testimony, but denied a motion for a continuance. Mr. Ott did not return to court that day, and the court granted the order of termination.

On June 4, 1981, findings of fact, conclusions of law, and the order of termination were entered. At that hearing, Mr. Ott's counsel moved to reopen the case to take Mr. Ott's testimony. The court denied the motion. Mr. Ott appeals the order of termination and the denial of his motions for continuance and to reopen the case.

Mr. Ott first contends that the trial court's findings which formed the basis for the order of termination were not supported by substantial evidence. The prerequisites for judicial termination of parental rights are stated in RCW 13.34.180. That statute, in pertinent part, reads:

A petition seeking termination of a parent and child relationship may be filed in juvenile court. Such petition shall conform to the requirements of RCW 13.34.040 as now or hereafter amended and shall allege:

(1) That the child has been found to be a dependent child under RCW 13.34.030(2); and . . .

(4) That the services ordered under RCW 13.34.130 have been offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been offered or provided; and

(5) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future; . . .

The allegations of the petition must be established by clear, cogent and convincing evidence. RCW 13.34.190(1)(a). Furthermore, the trial court must find that the order of termination is in the best interests of the child. RCW 13.34.190(2). Mr. Ott assigns error to findings of fact 5 and 6. These findings are simply recitals of elements 4 and 5 of RCW 13.34.180, *supra*.[1] Mr. Ott also assigns error to finding of fact 47, which states that it is in the best interests of the children that the parental relationship be terminated.[2]

---

[1] Mr. Ott also challenges the trial court's finding that a continuation of the parent and child relationship "diminishes the child's prospects for early integration into a stable and permanent home". RCW 13.34.180(6) (finding of fact 7). However, Mr. Ott does not mention this assignment of error in his brief. Accordingly, we decline to consider it here. *See Mellor v. Chamberlin,* 34 Wn. App. 378, 383, 661 P.2d 996, *review granted,* 100 Wn.2d 1001 (1983).

[2] A threshold question concerns the appropriate standard of appellate review in this case. Mr. Ott contends that the usual substantial evidence test does not apply when findings of fact must be proven by clear, cogent, and convincing evidence:

[E]vidence that may be sufficiently "substantial" to support an ultimate fact in issue based upon a "preponderance of the evidence" may not be sufficient to support an ultimate fact in issue, proof of which must be established by clear, cogent and convincing evidence. Thus, the question to be resolved is not merely whether there is "substantial evidence" to support the trial court's ultimate determination of the factual issue but whether there is "substantial evidence" to support such findings in light of the "highly probable" test.

(Footnote and citation omitted.) *In re Sego,* 82 Wn.2d 736, 739, 513 P.2d 831 (1973). *Accord, In re Hall,* 99 Wn.2d 842, 849, 664 P.2d 1245 (1983). However, this court has declined to follow the *Sego* standard of review, in a case involving the termination of parental rights:

The *Sego* court goes on to say, however, that an appellate court may not evaluate credibility or weight of evidence. *Sego,* at 737–40. Because we cannot envision any means of applying the *Sego* "high probability test" without inex-

Mr. Ott first challenges the trial court's finding that, prior to seeking termination, the State provided "all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future . . .". RCW 13.34.180(4). We find ample evidence that the State offered the necessary services. The record is also clear that Mr. Ott resisted the State's efforts to stabilize his housing situation and to provide him with psychological counseling. It was not the lack of services, but Mr. Ott's refusal to cooperate with them, that led to the order of termination.

Mr. Ott also challenges the trial court's finding that "there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future". RCW 13.34.180(5). Again we find substantial evidence to support this finding. As one social worker stated:

I think that the key issue in this case is the fact that Mr. Ott has never been able to recognize that he has a problem which is in need of resolution, and I think that to this day I don't think that—I don't think that anyone has any ideas about how to change that situation.

The 2–year history of Mr. Ott's failure to comply with the conditions of the dependency orders bears this out.

▮ Mr. Ott next contends that termination is not in the children's best interests. Because the children are still fond of their father, Mr. Ott argues that the best course is to continue long–term foster care, allowing Mr. Ott visitation rights. However, this option is not available under the applicable statutes. Pursuant to RCW 13.34.130, placement of a child in a foster home is clearly a temporary action. Regular reviews of foster placement are required to determine if the child can return to its natural parents.[3] If

---

orably passing upon the quality of the evidence, we have chosen to follow the traditional substantial evidence quantitative rule as clearly supported by the rationale of the opinion.

*In re Kier*, 21 Wn. App. 836, 839 n.1, 587 P.2d 592 (1978). Whichever standard of review applies, the State appears to have met its burden of proof in this case.

[3]RCW 13.34.130 states:

"(2) Whenever a child is ordered removed from the child's home, the agency

returning the child to the parents is impossible, the appropriate action is to terminate the parental rights and place the child in an adoptive home. RCW 13.34.180. As expressed by the Legislature:

> It is the policy of this state to encourage, within the limits of available funds, the adoption of certain hard to place children in order to make it possible for children living in, or likely to be placed in, foster homes or institutions to benefit from the stability and security of permanent homes in which such children can receive continuous parental care, guidance, protection, and love and to reduce the number of such children who must be placed or remain in foster homes or institutions until they become adults.

RCW 74.13.100. As Mr. Ott's guardian ad litem testified, the girls need a permanent home. Since Mr. Ott refused to comply with the conditions as ordered by the trial court, especially regarding psychiatric treatment, the court was left with no alternative but to order termination of parental rights.

Mr. Ott also assigns error to the court's finding that he was not presently able to care for his children. However, Mr. Ott did not object to this finding below. In any case, Mr. Ott concedes in his brief that the children should at least remain in foster care.

■ Mr. Ott next challenges several findings which summarize the results of psychological tests of Mr. Ott and his daughters, and which state the number of times Mr. Ott had visited his children. However, Mr. Ott does not mention these assignments of error in his brief. It is well settled that assignments of error unsupported by legal argument need not be considered on appeal. *See Mellor v. Chamber-*

---

charged with his or her care shall provide the court with a specific plan as to where the child will be placed, what steps will be taken to return the child home, and what actions the agency will take to maintain parent–child ties.

" . . .

"(3) The status of all children found to be dependent shall be reviewed by the court at least every six months at a hearing in which it shall be determined whether court supervision should continue."

*lin,* 34 Wn. App. 378, 383, 661 P.2d 996, *review granted,* 100 Wn.2d 1001 (1983); RAP 10.3(a)(5). Furthermore, these findings were uncontroverted at trial, and will not be disturbed on appeal.

■ Finally, Mr. Ott contends that the trial court erred in denying his motions for a continuance and to reopen the case. We find no error. As the Washington Supreme Court has stated:

> [T]he granting of a continuance and the reopening of a cause for additional evidence is within the discretion of the trial court and . . . the trial court's actions in this regard will not be reversed except upon a showing of an abuse of discretion and prejudice resulting to the complaining party.

*Estes v. Hopp,* 73 Wn.2d 263, 270, 438 P.2d 205 (1968). Mr. Ott was given full opportunity to testify on the third day of trial. Counsel for all parties had no further questions for him. Despite Mr. Ott's affidavit that he wanted to retestify concerning his relationship to his children, his housing arrangements, and other matters,[4] it appears that he suffered no prejudice from the denial of his motions. There had been extensive testimony from other witnesses concerning Mr. Ott's ability to care for his children. Mr. Ott himself had already testified as to his income and living arrangements. It was clear from his testimony that his housing situation had not stabilized. We find that it was not an abuse of discretion to deny his request to testify further. Similarly, a motion to reopen a case lies within the discretion of the trial court. *Fuller v. Ostruske,* 48 Wn.2d 802, 808, 296 P.2d 996 (1956). Where it is not an abuse to refuse to grant a continuance, the court does not abuse its discretion in denying a motion, based on the same grounds, to reopen the case. *Thornthwaite v. Greater Seattle Realty & Imp. Co.,* 160 Wash. 651, 654, 295 P. 933 (1931).

---

[4] Affidavit of Willard Ott in support of motion to reopen respondent's case.

For these reasons, the order is affirmed.

ANDERSEN and RINGOLD, JJ., concur.