[Nos. 14538–0–I; 14620–3–I.   Division One.   May 20, 1985.]

*In the Matter of the Welfare of*
CATERINA FERGUSON, ET AL.

EUGENE FERGUSON, ET AL, *Appellants,* v. THE DEPART–
MENT OF SOCIAL AND HEALTH SERVICES,
*Respondent.*

*M. Clare Donaly,* for appellant Eugene Ferguson (appointed counsel for appeal).

*Carey L. Critchlow* of *Washington Appellate Defender Association,* for appellant Christel Ferguson.

*Kenneth O. Eikenberry, Attorney General,* and *Noella A. Hashimoto, Assistant,* for respondent.

*Davis, Wright, Todd, Riese & Jones* and *Bruce Johnson,* for guardian ad litem.

CORBETT, C.J.—Eugene Ferguson and Christel Ferguson appeal the Order of Termination of Parent–Child Relationship. We affirm.

Eugene Ferguson met and married Christel, a German native, in 1970, while he was in the United States Army stationed in Frankfurt, Germany. They had four daughters, Christine, born in August 1973, Caterina, born in October 1978, and the twins, Alisia and Alana, born in August 1979. Mr. Ferguson was discharged from the Army in February 1980. The family moved to Washington in the fall of 1980. They resided with relatives of Mr. Ferguson who perceived

that Mrs. Ferguson inadequately cared for the children. In December 1980, upset with Mrs. Ferguson's neglect of the four girls, Mr. Ferguson's relatives sent her to Florida where she had a sister. Mrs. Ferguson returned to Washington about 2 months later, but she did not try to contact the children until almost a year later.

In October 1981, Mr. Ferguson moved with his children into a 1–room trailer without running water. Caterina slept in the same bed as her father separated by a hanging blanket partition. Christine slept in a bunk above them while the twins slept on nearby benches. In November 1981, in part due to the cramped quarters, a Department of Social and Health Services (DSHS) caseworker removed the children from Mr. Ferguson's care. A few days later, Christine was diagnosed as being a victim of child abuse because of a ruptured eardrum, a scar on her hand from a cigarette burn, and bruises on her thighs.

In May 1982, agreed dependency orders—relating to both parents—were entered and plans adopted so the children could eventually be reunited with their parents. The parents were unable to comply with the plans, and in May 1983, DSHS filed a petition to terminate the parent–child relationship.

After hearing testimony from 20 witnesses, including the Fergusons, DSHS caseworkers, and several mental health professionals, the court concluded that there was clear, cogent, and convincing evidence that the parent–child relationship should be terminated.

RCW 13.34.180 sets out six facts which the State must allege and prove in a termination hearing:

(1) That the child has been found to be a dependent child under RCW 13.34.030(2); and

(2) That the court has entered a dispositional order pursuant to RCW 13.34.130; and

(3) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency under RCW 13.34.030(2); and

(4) That the services ordered under RCW 13.34.130

have been offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been offered or provided; and

(5) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future; and

(6) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home;

RCW 13.34.190 provides in relevant part:

After hearings pursuant to RCW 13.34.110, the court may enter an order terminating all parental rights to a child if the court finds that:

(1)(a) The allegations contained in the petition as provided in RCW 13.34.180(1) through (6) are established by clear, cogent, and convincing evidence; . . . and

(2) Such an order is in the best interests of the child.

■ An appellate court will not disturb the findings of the trial court as long as they are supported by substantial evidence. *In re Sego,* 82 Wn.2d 736, 739, 513 P.2d 831 (1973); *In re Coverdell,* 39 Wn. App. 887, 893, 696 P.2d 1241 (1984). "This deference to the trial court is particularly important in deprivation proceedings." *In re Hall,* 99 Wn.2d 842, 849, 664 P.2d 1245 (1983). However, given the State's burden of proving its case by clear, cogent, and convincing evidence, the evidence must be more substantial than in the usual civil case in which the proof need only be by a preponderance of the evidence. *In re Hall, supra* at 849; *In re Sego, supra* at 739.

■ Mr. Ferguson alleges that there was no clear, cogent, and convincing evidence to establish 31 of the 52 findings of fact. While correctly assigning error to the findings in his brief, he only discusses the errors which pertain to the allegations in RCW 13.34.180. Assignments of error unsupported by legal argument need not be considered on appeal. *In re Ott,* 37 Wn. App. 234, 239, 679 P.2d 372 (1984). Therefore, the only findings of fact which we will address are those which pertain to the allegations in RCW 13.34-.180.

In May 1982, the court entered agreed orders of dependency between both parents and DSHS pursuant to RCW 13.34.180(1). These agreed orders both included dispositional orders as required by RCW 13.34.180(2). Further, as required by RCW 13.34.180(3), neither parent has had custody of the children since November 6, 1981, and the termination hearing was held in January and February of 1984, more than 6 months after the children were removed from the custody of their parents.

RCW 13.34.110 requires that the court shall receive and review a social study prepared pursuant to RCW 13.34.120 before entering an order based on agreement. Mr. Ferguson alleges that such a study was not prepared and argues that the dependency order was therefore invalid. As a result, the finding of fact required by RCW 13.34.180(1) was not supported by the evidence.

The social study that is required by RCW 13.34.110 should contain a description of specific programs that are needed to prevent serious harm to the child. RCW 13.34-.120(2)(a). The dispositional order following the order of dependency provided for many programs which the parties agreed were necessary. It is clear that Mr. Ferguson agreed to the order and understood what was required of him. Nor does Mr. Ferguson now identify how he was prejudiced by the possibility that a social study was not prepared. Error without prejudice is not grounds for reversal. *Thomas v. French,* 99 Wn.2d 95, 104, 659 P.2d 1097 (1983).

Additionally, following entry of the dependency order, there were several review hearings where Mr. Ferguson had the opportunity to contest the dependency status. The intent of the statute to provide services to reunite the family was carried out and appropriate services were ordered in the original dependency order and at subsequent review hearings. Thus, there was substantial compliance with the requirements of the statute, and Mr. Ferguson was not prejudiced by the court's initial failure, if any, to consider a social study. In summary, was find that there was clear, cogent, and convincing evidence to support the find-

ings of fact required by RCW 13.34.180(1)–(3).

Mr. Ferguson next argues that the finding of fact required by RCW 13.34.180(4) was not established. He points to the testimony of Dr. Emmett Early that Mr. Ferguson's problem was one of major adjustment disorder, calling for 6 months to 1½ years of individual psychotherapy, treatment which he did not receive. The other mental health professionals and caseworkers who worked with Mr. Ferguson generally agreed on the nature and extent of services to be offered, but for various reasons, he was not able to follow through with the different treatment programs. The evidence is overwhelming that all necessary services reasonably available were offered to Mr. Ferguson, but he was unwilling or unable to successfully utilize them and overcome his deficiencies as a parent. The trial court did not err by finding that there was compliance with RCW 13.34.180(4), even though there was disputed testimony.

Mr. Ferguson also argues that the finding of fact required by RCW 13.34.180(5) is premature. There was much testimony about Mr. Ferguson's amenability to treatment. The prognosis was guarded at best. In addition, Mr. Ferguson testified that it would be 4 or 5 years before he would graduate from school. Mrs. Ferguson was diagnosed as borderline mentally retarded, and it is undisputed that she would never be able to care for the children without an extensive support system which would be beyond available resources. There was clear, cogent, and convincing evidence to support the finding of fact required by RCW 13.34-.180(5).

Finally, Mr. Ferguson argues that the court could not properly find, as is required by RCW 13.34.180(6), that continuation of the parent–child relationship clearly diminishes the children's prospects for early integration into a stable and permanent home. He contends that a family had been identified which would consider an open adoption of the children permitting Mr. and Mrs. Ferguson to have continued contact with them.

As long as the children are merely dependent, the focus

is to work toward reuniting the family. *See* RCW 13.34.130. Given the agreed dependency of the children and the uncertainty if the parents would ever be able to care for their children, it is clear that there would be a long and uncertain period during which the children would remain in foster care and inherently unstable family situations. There was testimony that this is detrimental to the children and would diminish their prospects for early integration into a stable and permanent home. There was no evidence that open adoption would or could resolve the problem.

The six allegations required by RCW 13.34.180 were established by clear, cogent and convincing evidence. It was also clearly established that the order of the termination was in the best interest of the children to permit them as soon as possible to enter into a stable family relationship.

Mrs. Ferguson assigns error to the findings of fact that termination of the parent–child relationship is the least restrictive alternative available. She argues that her due process rights are violated by such a finding because of the court's failure to explore the possibility of open adoption which would permit her to visit her children once or twice a year.

While the due process clause establishes a parental constitutional right to the care, custody, and companionship of the child, the State has the responsibility to intervene to protect the child when the parent's actions damage the child's physical or mental health. *In re Sumey,* 94 Wn.2d 757, 762, 621 P.2d 108 (1980). Once it has been found that a parent has forfeited his or her parental rights and duties by consistently demonstrating neglect of parental responsibilities, the court looks to whether permanent deprivation is in the child's best interest. When the rights of the parent and the welfare of the child conflict, the latter must prevail. *In re Tarango,* 23 Wn. App. 126, 130, 595 P.2d 552 (1979).

> The trend is for a greater recognition of the fact that these impressionable and emotionally and psychologically fragile infants are not chattels or playthings or mere

> desiderata but have rights of their own which should be protected. They should be given a decent chance for fair development in life. They are entitled to protection from those forces which ignore the child's special needs and would submit them to the ungenerous demands of inadequate parents.

*In re Clark*, 26 Wn. App. 832, 839, 611 P.2d 1343 (1980). The evidence makes it clear that it is in the best interest of the children to terminate all contact with Mr. and Mrs. Ferguson.

Open adoption has not yet been accepted by our Legislature. After termination of parental rights, there is no statutory right to visitation under the provisions of RCW 13.34 or under the adoption statute.

> An order terminating the parent and child relationship divests the parent and the child of all legal rights, powers, privileges, immunities, duties, and obligations with respect to each other, except the right of the child to inherit from the parent.

RCW 26.32.058(1).[1] There are no Washington cases which support the mother's argument that she should be granted visitation rights. The cases cited by the mother, primarily from New York, are clearly distinguishable upon their facts.

> Courts are always reluctant to deprive parents of rights with respect to their children, and it is particularly sad when the parent cares for the child and desires to be a good parent, as appears to be the case here. However, it is the court's duty to see that those rights yield, when to accord them dominance would be to ignore the needs of the child.

*In re Aschauer*, 93 Wn.2d 689, 695, 611 P.2d 1245 (1980). The findings of fact and conclusions of law are supported by clear, cogent, and convincing evidence, and the termination order is in the best interest of the children.

The termination order was properly entered.

---

[1]RCW 26.32.058 was repealed by Laws of 1984, ch. 155, § 38, effective January 1, 1985. RCW 26.33.130, added by Laws of 1984, ch. 155, § 13, effective January 1, 1985, is similar in pertinent part.

Affirmed.

COLEMAN and GROSSE, JJ., concur.

Review denied by Supreme Court August 16, 1985.