201 P.3d 354 (2009)
In re The WELFARE OF MG, Minor Child.
No. 36975-3-II.
Court of Appeals of Washington, Division 2.
February 10, 2009.
*356 Manek R. Mistry, Jodi R. Backlund, Backlund & Mistry, Olympia, WA, for Appellant.
Janet Cattano, Port Angeles Office of the Atty. General, Port Angeles, WA, for Respondent.
PENOYAR, J.
¶ 1 Born several weeks early, underweight, and suffering from drug withdrawals, MG was placed in State care. MG's mother, KS, agreed to a dependency order that allowed MG to be placed with her while she underwent inpatient drug treatment, subject to approval from MG's medical care specialists. Subsequently, MG's care specialists determined that MG was too weak to immediately join KS in treatment and KS petitioned the juvenile court to revoke her agreed dependency order. The trial court denied her motion.
¶ 2 On appeal, KS argues that the dependency order should be invalidated because the juvenile court failed to follow several provisions of the Indian Child Welfare Act (ICWA), 25 U.S.C. § 1901, et seq. and failed to follow several RCW 13.34.110(3) provisions. Further, KS claims the order is invalid because the juvenile court lacked authority to enter a dependency order as to only one parent. Lastly, KS argues that the juvenile court abused its discretion in denying her motion to revoke the agreed order. None of KS's claims has merit and we affirm.

FACTS
¶ 3 On September 10, 2007, an Olympic Medical Center (OMC) employee referred MG to the Washington State Division of Children and Family Services (DCFS). MG, an Indian child, born premature 2 days earlier, weighed 4 pounds and was "definitely withdrawing from [some drug]...." Clerk's Papers (CP) at 33. MG's pediatrician believed MG was suffering withdrawal from opiates and placed her on morphine and antibiotics to treat the symptoms.
¶ 4 MG's mother, KS (a member of the Lower Elwah Tribe), admitted in an interview with a DCFS intake worker on September 11, 2007, that she had, in the past, abused methamphetamines, cocaine, opiates, and alcohol.[1] During the interview, KS denied using any illegal drug during her pregnancy but during an interaction with an OMC practitioner immediately following MG's birth, KS reported that she last abused drugs four months earlier. To explain how drugs may have entered her system during pregnancy, KS admitted that she may have "accidentally ingested a street-purchased cocktail drug" and that, around August 8, 2007, a female friend may have spiked her milk with Oxycodone. CP at 33. When the DCFS worker showed KS the OMC papers *357 documenting her attempt to obtain Oxycodone from that facility on May 14, 2007, KS adamantly denied that she had done so.[2]
¶ 5 The State prepared a dependency petition on September 13, 2007. The State subsequently obtained an order placing MG in DCFS custody. Because she required serious medical monitoring, DCFS placed MG in Pediatric Interim Care Center for continued treatment. On September 18, in accordance with 25 U.S.C. § 1912, a certification of an Indian expert was filed with the court, supporting out-of-home placement.
¶ 6 On October 11, KS signed an agreed dependency order, thus forgoing a fact finding hearing. In return, the DCFS agreed that MG could stay with KS at Perinatal Treatment Services (Perinatal) while KS underwent treatment for drug addiction. This plan depended on MG's health care provider's approval and Perinatal's willingness to follow MG's health care provider's recommendations.
¶ 7 MG's health care provider, Pediatric Interim Care Center, did not approve the move due to MG's weakened immune system and, at the October 25 disposition hearing, KS moved to withdraw her consent to the agreed order of dependency and sought a fact finding hearing. KS argued that she only agreed to the order on the condition that MG be able to join her in treatment. Further, KS argued that a social worker improperly selected the "yes" boxes on a screening test, without her consent, thereby causing the drug evaluation center to conclude that she was an addict. Report of Proceedings (RP) (Oct. 25, 2007) at 8-9. The juvenile court denied her motion to withdraw consent; KG now appeals.[3]

ANALYSIS

I. Background on the ICWA
¶ 8 Recognizing that "there is no resource more vital to the continued existence and integrity of Indian tribes than their children" and "that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children," Congress enacted the ICWA establishing "minimum Federal Standards for the removal of Indian children." 25 U.S.C. § 1901-1902. The ICWA applies whenever an "Indian child" is the subject of a "child custody proceeding."[4] 25 U.S.C. § 1903(1) and (4).
¶ 9 Different requirements apply for the voluntary placement as opposed to involuntary removal of an Indian child. Special care is taken to ensure that Indian parents voluntarily releasing their children to the care of others fully understand the terms of that release. 25 U.S.C. § 1913(a). Further, in a voluntary proceeding, if an Indian parent desires to withdraw his/her consent to placement, the child must be returned to his/her care. 25 U.S.C. § 1913(b).
¶ 10 Procedural and substantive requirements for an involuntary removal are found in 25 U.S.C. § 1912 of the ICWA. This section requires notification of the Tribe, appointment of counsel for the parents, an offer of remedial or rehabilitative services, and a showing that continued custody by the parents is likely to result in "serious emotional or physical damage to the child." 25 U.S.C. § 1912(e).

II. 25 U.S.C. § 1913(a) and § 1912
¶ 11 KS argues that in entering the agreed order of dependency, the juvenile court violated 25 U.S.C § 1913(a) of the ICWA when it did not discuss the terms and consequences of consent with her or complete *358 the required certificate recording her understanding.
¶ 12 25 U.S.C. § 1913(a) provides in part:
Where any parent or Indian custodian voluntarily consents to a foster care placement, or to termination of parental rights, such consent shall not be valid unless executed in writing and recorded before a judge of a court of competent jurisdiction and accompanied by the presiding judge's certificate that the terms and consequences of the consent were fully explained in detail and were fully understood by the parent or Indian custodian.
¶ 13 The ICWA defines "foster care placement" as:
[A]ny action removing an Indian child from its parents or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated.
25 U.S.C. § 1903(1)(i).
¶ 14 KS reasons that, because she consented to the dependency, and thus foster placement of MG, the juvenile court should have followed 25 U.S.C. § 1913(a) guidelines. To prevail, KS must show that MG was placed in "foster care" and that the placement was "voluntary." MG's placement in foster care is undisputed. The initial foster care placement in this case however, was made without KS's consent based on factors other than her agreement. On appeal, KS characterizes the dependency as a "voluntary" act but, in fact, KS maintained throughout the proceedings in juvenile court that MG should be placed with her and not in foster care. Furthermore, KS formally objected to the foster care placement on the record.[5]
¶ 15 KG's later consent to the dependency did not change the initial involuntary placement to a voluntary one, within the meaning of 25 U.S.C. § 1913. Clearly, the intent of 25 U.S.C. § 1913 is to encourage parents to make appropriate placement of their children when they are not confident of their own ability to parent. These placements may arise in a number of contexts where the parents are without counsel. In these situations, 25 U.S.C. § 1913 informs parents that they may later withdraw their consent to placement unless a court has thoroughly explained their rights to them. This intent would not be furthered by applying it to involuntary placements where the parents are represented by counsel.
¶ 16 25 U.S.C § 1912 governs involuntary removal proceedings and the juvenile court properly applied this section, requiring notification to the Tribe, appointment of counsel for the parents, an offer of remedial or rehabilitative services, and a showing that continued custody by the parents is likely to result in "serious emotional or physical damage to the child." 25 U.S.C. § 1912(e).
¶ 17 The juvenile court was not required to discuss the terms and consequences of consenting to a dependency with KS. KS had appointed counsel to represent her interests. Counsel explains the court procedures and advises parents on the consequences of any action.
¶ 18 In this case, the juvenile court acted properly under the guidelines of 25 U.S.C. § 1912 and we deny KS's appeal on this ground.

III. Substantial Compliance With RCW 13.34.110(3)
¶ 19 KS also challenges the validity of the agreed dependency order under RCW 13.34.110(3)(b) and (c).

A. RCW 13.34.110(3)(b)
¶ 20 KS argues that the agreed dependency order should be invalidated because the juvenile court did not first review a social study, as RCW 13.34.110(3)(b) requires. It is unclear in this case when the juvenile court *359 reviewed the individual service and safety plan (ISSP) the State prepared.[6]
¶ 21 The ISSPs main purpose is to identify the basis of the dependency proceedings and the services the parent needs. In re Welfare of Ferguson, 41 Wash.App. 1, 5, 701 P.2d 513 (1985). In this case, the dependency order detailed the reasons for the dependency and identified the services KS needed; namely, drug rehabilitation.[7] Where there is substantial compliance with RCW 13.34.110 and no resulting prejudice, the failure to prepare an ISSP does not invalidate the agreed order. In re Dependency of J.L.T., 56 Wash.App. 682, 691, 785 P.2d 829 (1990). There is substantial discussion in the record about the reasons for the dependency and the disposition order provided for the services indicated in the ISSP. To prevail, KS must show that the absence of an ISSP prejudiced her in some way. She fails to do this.
¶ 22 KS claims that prejudice arose from the social worker's completion of a drug screening form where all of the "yes" boxes were checked without KS's authorization. KS argues that because all "yes" boxes were checked, the State "basically [told] Oak Creek Center to find her to be an addict." RP (Oct. 25, 2007) at 9. KS reasons that, had an ISSP been prepared and read by the juvenile court, the court would have made KS aware of this form and she never would have agreed to the dependency.
¶ 23 Contrary to her argument, there is no reason to suppose that the court's review of an ISSP would have brought the social worker's alleged actions to KS's attention.[8] In any case, the social worker testified that KS refused to participate in the screening procedure and so he filled out the form only for internal review. The form was "not sent to Oak Street because [KS] did not approve it." RP (Oct. 25, 2007) at 11. KS cannot show that Oak Street relied on the form to determine KS's drug dependency and, thus, she cannot show prejudice.
¶ 24 Because KS fails to demonstrate how any alleged violation of RCW 13.34.110(3)(b) prejudiced her, and because the juvenile court substantially complied with the statute, her claim fails and the agreed dependency is enforceable.

B. RCW 13.34.110(3)(c)
¶ 25 KS argues that the agreed order should be invalidated because the juvenile court failed to follow RCW 13.34.110(3)(c) before entering the order. The State properly notes that because KS cannot show prejudice from this failure, her claim fails.
¶ 26 RCW 13.34.110(3)(c) requires that, before entering a stipulated or agreed dependency order, the court must, "within available resources," make inquiry and establish on the record that the parent understands the consequences of signing such an order. KS makes no substantive argument on this point except to note that the day the agreed dependency order was signed and filed, the juvenile court did not enter into a colloquy with her regarding her understanding of the order. She argues without citation to authority that, because the court did not have this colloquy with her, the agreed order should be invalidated. Error without prejudice, however, is not grounds for reversal. In re Ferguson, 41 Wash.App. at 5, 701 P.2d 513; See also Ford v. Chaplin, 61 Wash.App. 896, 899, 812 P.2d 532 (1991) (The person claiming error must show that her case was materially prejudiced by any such error. Absent such proof, the error is harmless).
¶ 27 KS does not explain what prejudice she suffered, instead she argues that the court's failure to engage in colloquy is a "fatal" error that "requires that the order be *360 set aside." Appellant's Br. at 9. KS had counsel, appeared before the juvenile court and, by our reading of the record, appeared to be aware and engaged in the dependency process. We will not set aside the agreed order without some showing of actual prejudice.

V. Court Properly Denied CR 60 Motion
¶ 28 KS contends that the denial of her motion to withdraw her consent to the dependency order was an abuse of discretion by the juvenile court.[9] There was no such abuse of discretion in this case.
¶ 29 KS apparently brought the motion under CR 60(b)(1), (4), and (11).[10] We review a juvenile court's decision to deny a motion under CR 60(b) for an abuse of discretion. In re Welfare of J.N., 123 Wash. App. 564, 570, 95 P.3d 414 (2004). A juvenile court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds. See In re Marriage of Kovacs, 121 Wash.2d 795, 801, 854 P.2d 629 (1993).
¶ 30 CR 60(b) authorizes a court to provide relief from an order on the basis of:
(1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order;
....
(4) Fraud ..., misrepresentation, or other misconduct of an adverse party;
.... [or]
(11) Any other reason justifying relief from the operation of the judgment.
¶ 31 KS established none of these grounds. Before the juvenile court, KS argued that the agreed order should be vacated (and the court should proceed to fact finding) on the basis that the parties were "mistaken" about Perinatal's suitability for MG. The juvenile court properly pointed out that the parties made no mistake: the quality of the treatment facility was not the problem; rather, it was the inadequacy of MG's immune system that prevented her placement there.[11] The parties were aware of the possibility that Pediatric Interim Care Center would not approve MG's placement with her mother at a treatment facility.[12] KS's underestimation of this probability does not constitute a "mistake" and it is not grounds for withdrawal of her agreement. Further, as the juvenile court noted, regardless of the agreement between the parties, the agreed dependency order had no binding effect on the juvenile court's placement decision at disposition.
¶ 32 As to CR 60(b)(4), KS's lawyer stated on the record that she was not "intentionally misled" by the State before signing the agreed dependency order; thus, the juvenile court did not abuse its discretion in denying KS's revocation motion on this ground. RP (Oct. 25, 2007) at 15. Further, CR 60(b)(11) applies only to extraordinary circumstances not covered by any other section of the rule. In re Marriage of Knutson, 114 Wash.App. 866, 872, 60 P.3d 681 (2003). Since KS has identified no circumstances except those already discussed and rejected, the juvenile court did not abuse its discretion and her appeal on this ground fails.

*361 VI. Juvenile Court Authority
¶ 33 Finally, KS argues that the juvenile court did not have authority to enter a dependency order "as to" the mother only. Under RCW 13.34.030(5), a dependent child is any child who:
(a) Has been abandoned;
(b) Is abused or neglected as defined in chapter 26.44 RCW by a person legally responsible for the care of the child; or
(c) Has no parent, guardian, or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development.
¶ 34 KS's agreement to the dependency provided the court authority, whether or not there was ever to be a dependency as to the father. See Smyth Worldwide Movers, Inc. v. Whitney, 6 Wash.App. 176, 179, 491 P.2d 1356 (1971) (it is well settled that judgment may be entered by consent). The record also indicates that dependency as to the father was clearly contemplated. The dependency petition named both parents. The juvenile court considered orders pertaining to each parent, but it postponed a decision as to the father for two weeks because he had not had a chance to discuss the matter with his attorney. The court gave KS the option of postponing entry of the agreed order until the father's hearing. Her attorney suggested entering the order and striking the disposition clause. DG, the father, agreed to the dependency at the November 11, 2007, hearing. The order DG signed did not vary from KS's order. The brief interim between entry of the two orders was a minor procedural matter that did not affect the court's authority. Relief on this basis is denied. We affirm.
¶ We concur: BRIDGEWATER and QUINN-BRINTNALL, JJ.
NOTES
[1] As detailed in the dependency petition, KS's past drug use is extensive. KS has been in and out of several rehabilitation facilities without successfully completing any of them.
[2] DCFS subsequently learned of four other occasions when KS requested Oxycodone from OMC emergency room personnel: December 17, 2006, December 26, 2006, February 26, 2007, and May 20, 2007. Most of these visits occurred after KS became pregnant. Each time, KS was given Oxycodone or a prescription for a similar pain reliever. During at least one visit, on May 14, 2007, OMC records "clearly indicate" that KS did not tell the physician that she was pregnant. CP at 33.
[3] A commissioner of this court affirmed the juvenile court's order on June 13, 2008. We granted KS's subsequent motion to modify; hence, the current appeal.
[4] All parties agree that the ICWA applies. There is no dispute that MG is an Indian child and that the dependency proceeding constituted a child custody proceeding.
[5] On the side of the dependency order, section 4.6, where it states that "[t]he child is placed in the custody, control, and care of DSHS/Supervising Agency which shall have the authority to place and maintain the child in: ... Licensed care or relative care," there is a handwritten notation stating "objection noted on record." CP at 26
[6] The juvenile court refers to the plan in its December 20, 2007 "Dependency Review Hearing Order," but not before. CP at 57. The ISSP is not included in materials on appeal but is improperly attached to the State's brief.
[7] The dependency order incorporated the dependency petition "by reference as Findings of Fact." CP at 24. The dependency petition detailed an extensive history of drug use by both parents. CP at 33-35.
[8] In any case, the court had before it ample evidence of KS's admitted past drug use. KS had access to all documents (including the Dependency Petition) and still agreed to the Dependency Order.
[9] In denying the motion, the juvenile court said:

I think the law regarding stipulations made in open court is pretty clear, absent some coercion, absent some fraud, [] people are bound by their stipulations. And the stipulation in this case was that we were actually going to do a disposition order today and that certainly disposition at Perinatal is one of the things the Court could order. But there's nothing that's binding the Court at all in a disposition order as to whether or not those things would be ordered. The issue is whether or not [KS] stipulated that either shethis is a C, that she was either unable or unwilling to care for the child at this point in time.
I don't see anything that changes my mind that [the agreed dependency order] should be honored. Your motion is denied.
RP (Oct. 25, 2007) at 17.
[10] The record KS provides does not include the written motion to withdraw.
[11] The court noted, "... the child can be placed in a [treatment facility with KS] once the child is medically ready." RP (Oct. 25, 2007) at 16.
[12] The October 11, 2007 Order of Dependency, which KS signed, stated:

If the mother enters inpatient treatment, the baby may be placed with her if
1) The child's medical provider recommends it &
2) It is permitted by the inpatient treatment provider.
If the mother leaves treatment against recommendations, the baby shall be returned to relative or licensed care
CP at 26.