[No. 21464–1–I. Division One. December 12, 1988.]

*In the Matter of the Dependency of*
ZACHARY RAMQUIST.

NEW HOPE OF WASHINGTON, *Respondent,* v. JANET
RAMQUIST, *Appellant.*

*Rita Griffith* of *Washington Appellate Defender Association,* for appellant.

*David V. Andersen* and *Leach, Brown & Andersen,* for respondent.

*Thomas Burke,* as guardian ad litem.

WEBSTER, J.—Janet Ramquist appeals an order terminating her parental rights to her son Zachary. She raises issues of standing, sufficiency of the evidence, and guardianship as a less restrictive alternative to termination. We affirm.

## FACTS

Zachary Ramquist, who is now 9 years old, has not lived with his biological mother, Janet Ramquist, since he was 4 months old. Mental illness rendered Ramquist unable to care for herself or Zachary at the time. She disappeared, leaving Zachary with her mother. The maternal and paternal grandmothers alternated caring for Zachary for the next 15 months.

The paternal grandmother then contacted New Hope of Washington, a child–placing agency, for placement of Zachary in foster care. New Hope found a foster family satisfactory to the grandparents and obtained the father's release

of parental rights. New Hope placed Zachary with the foster family in July 1981. Zachary has been living with the same family under New Hope's supervision ever since.

New Hope filed a dependency petition in October 1981. It obtained an order of dependency on July 16, 1984, and a dispositional order on September 4, 1984. The orders mandated that Zachary remain in foster care under the supervision of New Hope and that the agency have full power to consent to medical, dental, and psychological treatment. Ramquist appealed, and the Court of Appeals, Division One, affirmed by unpublished opinion. *In re Ramquist,* noted at 47 Wn. App. 1008 (1987).

The juvenile court entered several dependency review orders over the next 3 years, 1985–1987. A child psychiatrist appointed by the court reported in June 1985 that Zachary had "psychologically bonded" to his foster family. According to the psychiatrist, Zachary did not perceive Ramquist as his mother or as a mother figure. The psychologist insisted for Zachary's "emotional well being" that all contact between him and Ramquist cease. However, the court ordered monthly visitation for the next 2 years and bimonthly visitation thereafter. The court conditioned visitation on Ramquist attending regular counseling, taking her medications as prescribed, and being well enough to participate in the visits.

Ramquist suffers from chronic schizophrenia, a condition that has severely impaired both the frequency and progress of visitation. Ramquist required hospitalization three times during Zachary's stay with his grandparents. Twice she was imprisoned during Zachary's foster care, once for 10 months in 1983 and again for 4 months in 1986. She was hospitalized at least five times in 1985, twice in 1986, and four times in 1987. She continues to suffer relapses as a result of not taking her medication.

New Hope petitioned for termination in July 1987. The court heard testimony from doctors, caseworkers and social workers who all sought without success to reunite Ramquist with Zachary. The court made the requisite findings and

ordered termination on December 12, 1987. Ramquist filed this appeal.

## DISCUSSION

Ramquist argues that New Hope lacked standing to petition for termination under RCW 13.34.180. She also contends that the requirements of that section have not been established by "clear, cogent, and convincing evidence." Finally, she asserts that the trial court should have ordered a guardianship under RCW 13.34.231, as a less restrictive alternative to termination.

## STANDING

At the time of New Hope's petition, neither RCW 13.34.180 nor RCW 13.34.130(3)(c) (now RCW 13.34.130-(4)(c)) specified who could file termination petitions. Both sections simply stated that a termination petition could "be filed." RCW 13.34.180 now reads in part:

A petition seeking termination of a parent and child relationship may be filed in juvenile court by any party to the dependency proceedings concerning that child.

(New portion underlined.) Laws of 1988, ch. 201, § 2.

When the Legislature added guardianship procedures to RCW 13.34 in 1979, it clarified who had standing to file termination petitions, because the statutory prerequisites for guardianship are virtually identical to those for termination. *Compare* RCW 13.34.231 *with* RCW 13.34.180.

Any party to a dependency proceeding, *including the supervising agency,* may file a petition in juvenile court requesting that guardianship be created as to a dependent child. The department of social and health services shall receive notice of any guardianship proceedings and have the right to intervene in the proceedings.

(Italics ours.) RCW 13.34.230.

The Legislature clearly intended to provide maximum protection for dependent children by providing that "any person" could file a dependency petition. RCW 13.34.040. RCW 13.34.180 does not suggest that the Legislature intended to curtail its policy of liberal standing in the case

of termination. On the contrary, RCW 13.34.180 incorporates RCW 13.34.040 by reference, stating that the termination petition need only "conform to the requirements of RCW 13.34.040 and . . . allege" grounds for termination.

Other provisions reveal that the Legislature intended a cooperative effort between the Department of Social and Health Services and child welfare agencies, with the Department's role largely limited to oversight and financial assistance. *See* RCW 74.13.010; RCW 74.15.010.[1] RCW 13.34 charges child–placing agencies with the primary responsibility of reuniting dependent children with their parents. Former RCW 13.34.130(2). The Department's duty is to "oversee" implementation of the chapter. RCW 74.13-.036(1). The oversight statute recognizes that other "entities within the juvenile justice and child care systems" are "charged with implementing [chapter] . . . 13.34 RCW". RCW 74.13.036(3)(c), (d). The requirement of notice to DSHS when a guardianship is sought under RCW 13.34.230 facilitates the Department's oversight, but the Department need not intervene.

Child–placing agencies such as New Hope are specifically licensed to place children "for temporary care, continued

---

[1]RCW 74.13.010 reads in part:

"Declaration of purpose. The purpose of this chapter is to safeguard, protect and contribute to the welfare of the children of the state, through a comprehensive and coordinated program of public child welfare services providing for: . . . cooperation with public and voluntary agencies, organizations, and citizen groups in the development and coordination of programs and activities in behalf of children;"

RCW 74.15.010 reads:

"Declaration of purpose. The purpose of chapter 74.15 RCW and RCW 74.13-.031 is:

". . .

"(3) To promote the development of a sufficient number and variety of adequate child–care and maternity–care facilities, both public and private, through the cooperative efforts of public and voluntary agencies and related groups.

"(4) To provide consultation to agencies caring for children . . . in order to help them to improve their methods of and facilities for care; [and]

"(5) To license agencies as defined in RCW 74.15.020 and to assure . . . that adequate minimum standards are maintained by all agencies caring for children . . ."

care, or for adoption". RCW 74.15.020(3)(b). The adoption chapter provides that "[a] petition for termination of the parent–child relationship . . . may be filed by . . . [t]he department *or* an agency". (Italics ours.) RCW 26.33-.100(1)(a). Agencies also enjoy equal status with the Department for purposes of custody and placement of dependent children both before and after termination. RCW 13.34.130(1)(b); RCW 13.34.210.

We conclude that former RCW 13.34.180 grants New Hope standing. The 1988 amendment simply confirms what was implicit in the statutory scheme.

Moreover, the amendment itself grants New Hope standing. An original act and amendment "must" be read and construed as one law passed at the same time. *Frank v. Fischer,* 108 Wn.2d 468, 474, 739 P.2d 1145 (1987); *Ravsten v. Department of Labor & Indus.,* 108 Wn.2d 143, 150, 736 P.2d 265 (1987). A clarifying amendment applies retroactively so long as the amendment does not contravene previous court decisions construing the original statute.[2] *State v. Jones,* 110 Wn.2d 74, 82, 750 P.2d 620 (1988).

New Hope has standing under RCW 13.34.180, as amended, because it was a party to the dependency proceedings concerning Zachary at the time it filed its termination petition. *See* Laws of 1988, ch. 201, § 2, amending RCW 13.34.180. Indeed, New Hope was the ideal party to petition. New Hope filed the dependency petition that initiated the state's involvement with Zachary in 1981. Zachary's guardian ad litem deferred to New Hope throughout these proceedings and testified strongly in favor of termination. DSHS was not even a party. Neither the Department nor the guardian participated in this appeal.

---

[2]Judge McInturff's specially concurring opinion in *In re Kevin L.,* 45 Wn. App. 489, 726 P.2d 479 (1986), *suggesting* that only DSHS may file termination petitions, is not binding. Moreover, *Kevin L.* is distinguishable because, there, the agency did not have legal custody of the dependent child. *Kevin L.,* at 501 (McInturff, J., concurring).

SUFFICIENCY OF EVIDENCE

 The trial court found:

6. The clear, cogent, and convincing weight of the evidence is that the services listed in the Dispositional Order of September 4, 1984, were offered or provided to Ramquist, and that all necessary services, reasonably available, capable of correcting her parental deficiencies within the foreseeable future have been offered . . .

. . .

7. . . . [T]here is little likelihood that Ramquist's parental deficiencies . . . will be remedied so that Zachary could be returned to her in the near future.

. . .

8. . . . [C]ontinuation of the parent–child relationship between Ramquist and her son, Zachary, clearly diminishes Zachary's prospects of an early integration into a stable and permanent home.

These findings parallel RCW 13.34.180(4)–(6) and may not be disturbed if the record contains clear, cogent, and convincing evidence supporting them. *In re Hall,* 99 Wn.2d 842, 850–51, 664 P.2d 1245 (1983); *In re Chubb,* 52 Wn. App. 541, 762 P.2d 352 (1988).

 The court also found that "[i]t is in the best interest of Zachary that his mother's rights be terminated and that he be allowed to grow up without his mother's involvement." Finding of fact 9. The burden of proof on the issue of Zachary's best interests is not "clear, cogent, and convincing" evidence, as it is for the elements of RCW 13.34-.180(1)–(6). *See* RCW 13.34.190. Rather, RCW 13.34.190(2) gives the trial court discretion not to grant termination even when the petitioner establishes the elements of RCW 13.34.180(1)–(6) with the requisite degree of proof. *See Santosky v. Kramer,* 455 U.S. 745, 769, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982) (state must prove parental unfitness by clear and convincing evidence); *In re Sego,* 82 Wn.2d 736, 739, 513 P.2d 831 (1973) (same). "On appeal, we are constrained to place '*very strong* reliance on trial court determinations of what course of action will be in the best interests of the child.'" *In re Pawling,* 101 Wn.2d 392, 401,

679 P.2d 916 (1984) (quoting *Todd v. Superior Court,* 68 Wn.2d 587, 591, 414 P.2d 605 (1966)).

Finding of fact 6, RCW 13.34.180(4)

The dispositional order mandated counseling, parenting classes, medication, and visitation. The record establishes compliance with this fourfold treatment plan, and, hence, with the first half of finding 6 and RCW 13.34.180(4). First, Ramquist received regular counseling since September 4, 1984, the date of the dispositional order. Second, New Hope informed Ramquist of several parenting classes near her home, and Ramquist actually completed a class in Tacoma. Third, Ramquist received medication for her schizophrenic condition. Her doctors and caseworkers emphasized the importance of taking it daily, although she often neglected to do so. Fourth, visitation occurred as scheduled, except when Ramquist refused to cooperate or became unavailable due to hospitalization or incarceration.

The second half of finding 6 and RCW 13.34.180(4) is supported by unanimous expert testimony from two doctors and a caseworker that Ramquist's parental deficiencies are untreatable. Ramquist's own doctor testified that her problems would not be remedied by further treatment. Additional services are therefore unnecessary. *Hall,* at 850–51. Moreover, a parent's unwillingness or inability to make use of the services provided excuses the State from offering extra services that might have been helpful. *In re Ferguson,* 41 Wn. App. 1, 6, 701 P.2d 513, *review denied,* 104 Wn.2d 1008 (1985).

Findings of fact 7 and 8, RCW 13.34.180(5), (6)

The expert testimony that there is little likelihood of a parent–child reunion in the near future, if ever, supports finding 7 and satisfies RCW 13.34.180(5).

The following testimony also supports finding 8, establishing compliance with RCW 13.34.180(6): The court appointed child psychiatrist testified that continuation of the parent–child relationship would be detrimental to Zachary. The psychiatrist urged that any future contact between Zachary and Ramquist be entirely at Zachary's

mature and counseled request. A caseworker testified that Zachary is an insecure and anxious child because he understands the "precariousness" of his foster placement and has no control over it. Zachary's guardian ad litem agreed that he "deserves to be out of the limbo of the foster situation". Statutory and case law upholds this view. *See* RCW 13.34-.180(2), former RCW 13.34.130(3)(c); *Ferguson,* at 7; *Hall,* at 851.

"When the rights of basic nurture, physical and mental health, and safety of the child and the legal rights of the parents are in conflict, the rights and safety of the child should prevail." RCW 13.34.020. The same section declares "that the family unit is a fundamental resource of American life which should be nurtured." However, the "family unit" of which Zachary is a part is his foster family, with whom he has lived since July 1981, virtually his entire life, and to whom he has "psychologically bonded." *In re Hansen,* 24 Wn. App. 27, 37, 599 P.2d 1304 (1979). Long–term foster care constitutes a "stable and permanent home" for purposes of RCW 13.34.180(6) such that the rights of biological parents may be terminated to facilitate such care. *In re Esgate,* 99 Wn.2d 210, 660 P.2d 758 (1983).

Finding of fact 9, RCW 13.34.190(2)

The testimony that continuation of the parent–child relationship is harmful to Zachary supports the trial court's finding that termination is in his best interest. This meets the requirement of RCW 13.34.190(2). The trial court was well within its discretion in granting termination, without regard to the usual "deference" given to the trial court "in deprivation proceedings." *Hall,* at 849. Both the guardian ad litem and the court appointed child psychiatrist testified that termination was in Zachary's best interests. No expert testified to the contrary.

GUARDIANSHIP AS LESS RESTRICTIVE ALTERNATIVE

The first five prerequisites for establishing a guardianship are the same as those for termination. *Compare* RCW 13.34.180(1)–(5) *with* RCW 13.34.231(1)–(5). However,

guardianship focuses on the "best interests of the family," RCW 13.34.231(6), whereas termination looks to the "best interest of the child." RCW 13.34.190(2). A conflict arises when "continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home". RCW 13.34.180(6). In such case, the best interest of the child should prevail. RCW 13.34.020.

 The appropriate inquiry in termination proceedings is jurisdictional and dispositional. First, the statutory prerequisites for termination must be met, and, second, termination must be in the best interests of the child. *See Pawling,* 101 Wn.2d at 400 (addressing the guardianship versus termination issue in the context of former RCW 26.32.056). When termination is in the best interest of the child, and guardianship is not, termination should be ordered to the exclusion of guardianship. *Pawling,* 101 Wn.2d at 400.

We find that the best interests of Zachary preclude guardianship as an alternative to termination. The only family Zachary knows is his foster family. He does not even perceive Ramquist as his mother. Maintenance of the biological bond has already hurt Zachary. Termination is necessary to integrate him into a stable and permanent home. It is clearly in his best interest.

Affirmed.

SCHOLFIELD, C.J., and WILLIAMS, J., concur.

Review denied by Supreme Court February 28, 1989.