CASA (COURT APPOINTED SPECIAL ADVOCATE), Respondent Below, Appellant,

v.

DEPARTMENT OF SERVICES FOR CHILDREN, YOUTH AND THEIR FAMILIES, DIVISION OF FAMILY SERVICES, Petitioner Below, Appellee,

Jeanette V. Johnson and Alonzo Morris, Respondents Below, Appellees,

Betty Treherne and Amos Treherne, and Yvette Goslee, Petitioners Below, Appellees.

No. 059, 2003.

Supreme Court of Delaware.

Submitted: Aug. 26, 2003.
Decided: Oct. 7, 2003.

Kristin S. Gibbons, Georgetown, DE, for appellant, CASA.

Kathryn L. Welch, Department of the Attorney General, Georgetown, DE, for appellee, Division of Family Services.

Bruce A. Rogers, Georgetown, DE, for appellee, Jeanette Johnson.

Margaret R. Cooper of Hudson, Jones, Jaywork & Fisher, Georgetown, DE, for respondent, Alonzo Morris.

Yvette Goslee, Landover, MD, pro se.

Amos and Betty Treherene, Laurel, DE, pro se.

Before VEASEY, Chief Justice, STEELE and JACOBS, Justices.

STEELE, Justice:

This is an appeal from two Orders of the Family Court of the State of Delaware in and for Sussex County granting legal guardianship of two minor children, Jane and Kay,[1] to non-relative foster parents. The Respondent–Appellant, a Court Appointed Special Advocate, raises two arguments on behalf of the children. First, the CASA argues that a guardianship as defined in 13 *Del. C.* §§ 2330 through 2340 (standard guardianship) does not constitute a legal guardianship contemplated by the Adoption and Safe Families Act.[2] The

---

1. To protect the identity of the minor children, the names used in the opinion are pseudonyms. SUPR. CT. R. 7(d).

2. 42 *U.S.C.* §§ 620–679.

CASA argues that a standard guardianship is not an appropriate permanency option in the absence of compelling reasons showing why a termination of parental rights and adoption is not in the children's best interests. Second, the CASA contends that the Family Court judge erred by not explicitly addressing the best interest factors enumerated in 13 *Del. C.* § 722 and that had he done so, he could fairly conclude only that a standard guardianship is not in the children's best interest. Because we find that the record supports the Family Court Judge's conclusion that a standard guardianship is in the children's best interest and that the legal status conferred by a standard guardianship satisfies the permanency requirements of ASFA, we AFFIRM.

## I

Alonzo W. Morris is the natural father of Jane, a female child born February 1, 1993. The natural father of Kay, a female child born August 23, 1996, is unknown. Jeanette V. Johnson is the natural mother of both children. On April 15, 2001, the Division of Family Services seized the children after Family Court granted DFS' emergency dependency/neglect petition. Both mother and father were incarcerated at the time DFS seized the children. DFS placed the children in the home of the mother's family friends, Betty and Amos Treherne. Soon after the placement, the Trehernes became licensed foster parents.

Shortly after her release from prison, the mother found appropriate housing and DFS returned the children to her on a trial basis. However, DFS removed the children after five weeks for various documented reasons including the mother's continued unemployment and the children's poor school attendance. DFS returned the children from the mother to the Trehernes and the Trehernes filed a petition for a standard guardianship of both children.[3] Before the Family Court-ordered permanency hearing set for June 21, 2002 took place, DFS proposed a standard guardianship with the Trehernes as the most appropriate permanency plan. All parties[4] agreed with the DFS proposal, except the CASA. Following additional briefing by the parties, the Family Court issued a Permanency Order granting guardianship to the Trehernes in two orders dated January 8, 2003 and January 14, 2003. The CASA appealed.

## II

This Court's review of appeals from the Family Court extends to a review of the facts and law as well as to a review of the inferences and deductions made by the trial judge.[5] This Court will not disturb findings of fact unless they are clearly wrong and justice requires their overturn.[6] Moreover, this Court will not substitute its own opinion for the inferences and deductions made by the trial judge where those inferences are supported by the record and are the product of an orderly and

3. The Trehernes were unable to file for permanent guardianship under 13 *Del. C.* §§ 2350 through 2359 because they were not blood relatives.

4. The mother and father supported the DFS proposal but opposed any attempt to terminate their parental rights. The Trehernes supported the DFS proposal. Additionally, Yvette Goslee, the father's aunt, supported the DFS proposal and agreed to have her petitions for guardianship of both children held in abeyance in the event that the Court refused to grant guardianship status to the Trehernes.

5. *Solis v. Tea,* 468 A.2d 1276, 1279 (Del.1983) (citing *Wife (J.F.V.) v. Husband (O.W.V., Jr.),* 402 A.2d 1202, 1204 (Del.1979)).

6. *Id.*

logical deductive process.[7] If the Family Court has correctly applied the law, the standard of review is abuse of discretion.[8] Errors of law, however, are reviewed *de novo*.[9]

### III

Upon its passage in 1997, ASFA mandated that a "child's health and safety shall be the paramount concern," and that the State should be making timely permanency decisions for children.[10] ASFA provides that a "legal guardian" is only one of several appropriate placement options for a Family Court to consider at a permanency hearing.[11] ASFA defines the term "legal guardianship" as

> ...a judicially created relationship between child and caretaker which is intended to be permanent and self sustaining as evidenced by the transfer to the caretaker of the following parental rights with respect to the child: protection, education, care and control of the person, custody of the person, and decisionmaking. The term "legal guardian" means the caretaker in such a relationship.[12]

The language of ASFA further indicates that a court-ordered permanent placement living arrangement other than one of the enumerated options requires the State Agency to demonstrate compelling reasons why a termination of parental rights and adoption is not in the children's interests.[13] A permanency plan that qualifies as a legal guardianship under ASFA would not require a demonstration of compelling reasons why termination and adoption would not be in the children's best interest.

Delaware's guardianship statute defines permanency as "the safe, stable and custodial environment in which a child is raised and the life-long relationship that child establishes with a nurturing caregiver."[14] The definition applies to both the standard guardianship and the permanent guardianship provisions of Chapter 23 of Title 13. When committed non-relative foster parents wish a child to be a permanent part of their lives, but also wish the child to have continued interaction with its natural parents, termination of parental rights and adoption is not an option that is in the child's best interest.[15] In these cases, a child is not in "limbo," and a standard guardianship can provide the kind of safe and stable environment that "rises to the level of permanency."[16]

Here, the CASA's position that ASFA does not contemplate a Delaware "standard" guardianship to be a "legal guardianship" creating a permanent and self-sustaining relationship is meritless. Delaware's guardianships under Chapter 23 of Title 13 are legal guardianships ASFA contemplates because in each case the relationship is judicially created, and may only be modified or terminated after a

---

7. *Solis*, 468 A.2d at 1279.

8. *Jones v. Lang*, 591 A.2d 185, 186 (Del.1991).

9. *In re Heller*, 669 A.2d 25, 29 (Del.1995).

10. 42 *U.S.C.* §§ 620–679; *Brown v. DFS*, 803 A.2d 948, 953 (Del.2002) (promoting timely decision-making on permanency matters by state foster care providers).

11. 42 *U.S.C.* § 675(5)(c).

12. 42 *U.S.C.* § 675(7).

13. 42 *U.S.C.* § 675(5)(c).

14. 13 *Del.C.* § 2302(16).

15. *Division of Family Services v. Hutton*, 765 A.2d 1267 (Del.2001).

16. *Id.* at 1274 (citing *Shepherd v. Clemens*, 752 A.2d 533 (Del.2000)).

court reviews a petition in light of the overall best interests of the child. The ability of a parent to challenge the guardianship does not, standing alone, destroy the elements of permanency that ASFA demands. A legal guardianship order remains effective until a court terminates it, or until the child is either adopted, reaches the age of 18, or is married. A legal guardian, the child, or the parent can ask the court to terminate the legal guardianship based on a change in circumstances. Although it is less legally secure than adoption, the guardianship is more permanent than foster care, and contains all the indicia of parental rights contemplated by ASFA, including protection, education, custody, care and control of the person. Accordingly, a permanency plan that includes a guardianship does not require DFS to demonstrate compelling reasons why termination of parental rights and adoption is not in the best interest of the child.

■ Accordingly, Family Court Judges may, in the exercise of their discretion, approve guardianships where the circumstances suggest that the legal relationship thus created is in the best interest of the child.

## IV

■ The CASA next argues that the Family Court Judge failed to include an explicit analysis of the best interest of the child as required by 13 *Del. C.* § 722, and that the Final Order was not in the children's best interest. That statute requires the Family Court to consider the following factors:

(a) The wishes of the child's parents as to his custody and residential arrangements;

(b) The wishes of the child as to his custodian and residential arrangements

(c) The interaction and interrelationship of the child with other relatives with whom he lives;

(d) The child's adjustment to his home, school and community;

(e) The mental and physical health of all individuals involved;

(f) Past and present compliance by both parents with their rights and responsibilities to their child;

(g) Evidence of domestic violence.

In *Spence v. Division of Family Services*,[17] we determined that a trial judge need not enumerate the seven applicable factors so long as the opinion clearly demonstrates that they were analyzed. Here, the permanency order creating the standard guardianship includes findings that: (i) the mother and father both reaffirmed their desire that the court award guardianship to the Trehernes; (ii) Yvette Goslee, the father's aunt, consented to the granting of the standard guardianship; (iii) the children are well bonded to the Trehernes; (iv) the children seem well adjusted to the Trehernes and are always well-dressed and very happy; and (v) the Trehernes were both in good health.[18] Accordingly, the judge correctly applied a careful Section 722 analysis to the facts.

Finally, the Family Court judge justly applauded the Trehernes' commitment to provide a loving, stable environment for these children that contemplates the rehabilitation of the mother and father and the possible reintroduction of the children to them at some future time. We are convinced that the Family Court's Order does not leave these children in limbo, and con-

---

17. 817 A.2d 805 (Del.2003).

18. *Division of Family Services v. J.V.J.*, 820 A.2d 516 (Del.Fam.2003).

clude that the best interests of both children are indeed reflected in the permanency plan.

## V

We determine that a guardianship ordered pursuant to 13 *Del. C.* §§ 2330 through 2340[19] is a legal guardianship under the Adoption and Safe Families Act and therefore an appropriate option for permanency. We also conclude that an order of guardianship under these standard guardianship provisions does not require a showing of compelling reasons why the termination of parental rights and adoption is not in the children's best interest. Finally, we conclude that the Family Court Judge conducted a proper analysis of the "best interest" factors under 13 *Del. C.* § 722.[20]

Accordingly, the Orders of the Family Court dated January 8, 2003 and January 14, 2003 are AFFIRMED.

---

**19.** DEL. CODE ANN. tit. 13, §§ 2330 through 2340 (2003). These provisions are referred to as the "Standard Guardianship" provisions of the Delaware Code.

**20.** DEL. CODE ANN. tit. 13, § 722 (2003).