[Nos. 53170-1-I; 53171-9-I.   Division One.   September 20, 2004.]

*In the Matter of the Dependency of* A.C., ET AL.

THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent,*
v. CATHY CHAFFIN, *Appellant.*

*Maureen M. Cyr* (of *Washington Appellate Project*), for appellant.

*Christine O. Gregoire, Attorney General*, and *Mary F. Li, Senior Counsel*, for respondent.

ELLINGTON, J. — A court faced with competing petitions for guardianship and termination must first determine whether guardianship, rather than termination or continued efforts to reunify, best serves the child's interests. We here identify some factors for consideration in making this decision. If guardianship is not preferable, then the court must decide whether continuing the parent's relationship with the child would diminish the child's prospects for early integration into a stable and permanent home, such that parental rights should be terminated.

In this case, the court decided against guardianship and terminated Chaffin's parental rights. Substantial evidence supports the court's findings, and we affirm.

## BACKGROUND

Cathy Chaffin has struggled with addiction to cocaine for more than 18 years. She has repeatedly attempted treatment, but did not complete a program until 2002. She later relapsed. At the time of trial, she was living in Oxford House and had been clean and sober for seven months.

Chaffin is the mother of five children. R., age 17, lives with Chaffin's sister Dorothy Chappell and her family. J., age 9, lives with Chaffin's sister Suprema Jackson and her family. Both R. and J. are under dependency guardianships. Chaffin agreed to an open adoption for K.Y., age 6. The remaining two children, S.Y., born May 17, 1999, and A.C., born November 16, 2000, are the subjects of this action.

A.C. tested positive for cocaine at birth. The next day, the Department of Social and Health Services (DSHS) removed her to a pediatric care center, where she remained for 46 days. Soon thereafter, DSHS placed A.C. and S.Y. with the Jacksons under a dependency guardianship.

The children needed speech therapy. Despite authorization for a therapist to attend the children's day care center near the Jacksons' home, DSHS moved the children into day care at Childhaven, 20 miles away. At the time, Suprema Jackson was working in Bothell and was being treated for breast cancer.

Thereafter, the relationship between DSHS and the Jacksons deteriorated. DSHS expressed concerns about the children's hygiene and about the Jacksons' failure to advocate for immediate medical care on several occasions. For their part, the Jacksons felt beleaguered by DSHS. After a year, the Jacksons agreed to give up their guardianship of the children. On March 28, 2002, the court entered an uncontested order finding it was "contrary to the welfare of the children to remain in the current relative placement."[1]

Since then, S.Y. and A.C. have been in three different foster homes, staying 6 months in the first, 1 month in the second, and 10 months in the home in which they resided at the time of trial. They are happy in their current placement and have bonded with the family, which is a potential adoptive home.

DSHS filed a petition for termination of Chaffin's parental rights. Chaffin filed a petition for a dependency guardianship, nominating the Jacksons as guardians.

At the time of trial, A.C. was not quite three; S.Y. was four. Chaffin was living in Oxford House, a clean and sober facility. Psychologist Dr. Richard Borton evaluated Chaffin in November 2002. He, Chaffin's social worker, the court-appointed special advocate and Chaffin herself, all testified she could regain custody of the children only after she

---

[1] Clerk's Papers at 329.

successfully completed at least one year of sobriety and treatment.[2]

Testimony established the children had been happy with the Jacksons, and that their extended family is stable, warm and loving. The Jacksons testified they relinquished the guardianship because of their difficulties with DSHS and Suprema Jackson's health problems, but that it was important that the children remain part of the family.

In weighing the options of guardianship and termination, the trial court noted the children's young ages, their need for permanence, their lack of current ties to mother or extended family, and their current stable placement, and found that termination, not guardianship, was in the children's best interests. Chaffin appeals.

## DISCUSSION

■ The first five requirements for dependency guardianship or termination of parental rights are the same, although the standard of proof is different: 1) the child has been found to be dependent, 2) the court has entered a dispositional order, 3) the child has been removed from the parent's custody for at least six months pursuant to a finding of dependency, 4) all services reasonably available and capable of correcting parental deficiencies have been offered or provided, and 5) there is little likelihood that conditions will be remedied so that the parent may regain custody within the foreseeable future.[3]

Chaffin concedes the first four requirements were met here. She contests the last. Since this is a threshold determination, we address it first.

---

[2] Chaffin's brief alludes to evidence of her sobriety since trial. The State moves to strike. Chaffin cites a portion of the opinion in *In re Dependency of H.W.*, 92 Wn. App. 420, 961 P.2d 963, 969 P.2d 1082 (1998), as authority for introducing posttrial evidence on appeal. However, the opinion was later amended to delete the cited portion. *Id.*, 969 P.2d 1082. The motion to strike is granted.

[3] RCW 13.34.180(1)(a)-(e), .231(1)-(5). The standard of proof for guardianship is preponderance of the evidence, while the standard for termination is clear, cogent, and convincing evidence. *In re Dependency of K.S.C.*, 137 Wn.2d 918, 931, 976 P.2d 113 (1999).

■ *Likelihood Conditions Will Be Remedied Within Foreseeable Future.* What constitutes the foreseeable future is determined from the child's point of view.[4] The statute provides: "A parent's failure to substantially improve parental deficiencies within twelve months following entry of the dispositional order shall give rise to a rebuttable presumption that there is little likelihood" of remedy in the near future.[5]

This presumption applies here and was not rebutted. A.C. had never been in Chaffin's care; S.Y. had been out of her care most of his life. It was undisputed that, although Chaffin was doing better than ever before, she had not progressed to the point where she could take custody of the children. Chaffin must complete at least one year of sobriety before she could be in a position to care for the children, and two witnesses testified it would take one year from the date of trial. This is not the foreseeable future for a three-year-old child. In addition, Chaffin's sobriety was fragile, and her history of addiction long (18 years). The court was aware of her relapse history, and was not required to assume her sobriety would continue uninterrupted, however encouraging her recent progress.

We commend Chaffin's progress, and hope it continues. But the trial court did not err in finding that there was little likelihood of remedy in the near future.

■ *Guardianship Versus Termination.* This case involves a choice between competing petitions for dependency guardianship and termination of parental rights. Chaffin contends the court erred in finding that guardianship was not in the children's best interests. Our Supreme Court has noted that in such cases "the inquiry will be whether the statutory requirements have been satisfied."[6] Since the first five requirements are satisfied, the question is whether

---

[4] *In re Welfare of Hall,* 99 Wn.2d 842, 851, 664 P.2d 1245 (1983); *In re Dependency of T.R.,* 108 Wn. App. 149, 164-66, 29 P.3d 1275 (2001).

[5] RCW 13.34.180(1)(e).

[6] *K.S.C.,* 137 Wn.2d at 931.

guardianship is preferable: whether guardianship, rather than termination of the parent-child relationship or continuation of efforts to return the child to the custody of the parent, would be in the best interests of the child.[7] Embedded in the statute is a comparison between guardianship and termination. The question is which better serves the child's interests.

This requires an examination of the effect of guardianship versus termination. A court establishing a dependency guardianship must consider the wishes of the parent, specify an appropriate frequency of visitation between the parent and the child, and set forth the need for any continued involvement by the agency.[8] The dependency continues in effect with the guardian as a party.[9] Guardianship thus facilitates continued involvement with the parent and/or extended family, as well as the Department. Termination, on the other hand, occurs only where "continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home."[10] While a detrimental personal relationship would not be irrelevant, this factor is mainly concerned with the continued effect of the *legal* relationship between parent and child, as an obstacle to adoption; it is especially a concern where children have potential adoption resources. Where a conflict arises between the two statutes, the court should focus on the best interests of the child.[11]

Clearly, a primary consideration is permanency for the child. Under the previous version of the statute, we held that guardianship was "inherently temporary," and served "to give the parent an opportunity to take those steps necessary to resume custody of the child in the foreseeable

[7] RCW 13.34.231(6).

[8] RCW 13.34.236(2), .232(1)(d), (e).

[9] RCW 13.34.232(4).

[10] RCW 13.34.180(1)(f).

[11] *In re Dependency of A.V.D.*, 62 Wn. App. 562, 574, 815 P.2d 277 (1991); *In re Dependency of Ramquist*, 52 Wn. App. 854, 862-63, 765 P.2d 30 (1988).

future."[12] In 1994, the legislature amended the statute so guardianship is not, in fact, for the purpose of providing a parent more time to resume custody.[13] RCW 13.34.231 now makes guardianship mandatory if the first five factors are satisfied and the court finds that "guardianship, rather than termination of the parent-child relationship *or continuation of efforts to return the child to the custody of the parent*, would be in the best interest of the child."[14] The statute also now provides that guardianship will remain in effect until the child reaches the age of 18 or the court terminates the guardianship,[15] that termination or modification will occur only upon a substantial change in circumstances and only if such a change is in the best interests of the child,[16] and that guardians may receive foster care payments.[17] These changes reflect the increasing interest in providing children with continuing connection to their extended families, culture, traditions and history.[18] Dependency guardianships now offer sufficient permanency to present a viable alternative to termination in appropriate cases. As we stated in *In re Dependency of F.S.*:[19] "[A] measure of flexibility is required to allow the State to provide permanence for a child without terminating the parent's rights. The statute provides for secure placement of the child while authorizing both visitation between parent and child and continuing involvement by state agencies."

---

[12] *A.V.D.*, 62 Wn. App. at 570.

[13] LAWS OF 1999, ch. 288, § 6.

[14] RCW 13.34.231(6) (emphasis added).

[15] RCW 13.34.232(5).

[16] RCW 13.34.233(2).

[17] RCW 13.34.234.

[18] *See* FAMILIES FOR KIDS OVERSIGHT COMMITTEE, WASHINGTON PERMANENCY REPORT/ FAMILIES FOR KIDS PARTNERSHIP 1998-2003, at 13.

[19] 81 Wn. App. 264, 270, 913 P.2d 844 (1996).

We note that DSHS seems generally skeptical about guardianships,[20] and emphasizes that one objective of the statute is placing children in permanent homes. But termination does not necessarily accomplish this goal any better than guardianship. There is no guaranty that adoption will follow termination, and there are many children in Washington who are legally free but have, for any number of reasons, languished in the foster care system. Simply put, termination does not ensure permanence, and may even dispel what permanence does exist in a child's life, if it severs ties to an extended family. For this reason, the idea of permanence should not be regarded as a talisman that automatically opens the door to termination. In some situations, a dependency guardianship may provide a greater level of stability than termination, while serving the best interests of the child in other ways as well.[21]

As yet, although Washington courts are said to "look at dependency guardianship as a less restrictive alternative to termination,"[22] there are no Washington cases delineating the factors for consideration where both options are presented. Other states have grappled with this issue. In *CASA (Court Appointed Special Advocate) v. Department of Services for Children, Youth & Their Families, Division of*

---

[20] DSHS argued to the trial court that "guardianship is by nature an imperma- nent temporary arrangement." Report of Proceedings (RP) (Sept. 3, 2003) at 38. In its brief on appeal, DSHS claims our Supreme Court in *K.S.C.* "has held that the trial court is not required to consider dependency guardianship as an alternative to termination of parental rights." Resp. Br. at 23. But the court in *K.S.C.* did not so state, much less so hold. The court held that *in the absence of a petition for guardianship*, the court is not required to consider that option, and went on to say that when petitions for both termination and guardianship are filed, "the inquiry will be whether the statutory requirements have been satisfied." *K.S.C.*, 137 Wn.2d at 931. DSHS also argues that "[d]ependency guardianship can only be entered if the court rules out termination as a viable option for the child." Resp't's Br. at 23 (citing RCW 13.34.231(6)). DSHS misreads the statute. RCW 13.34.231(6) authorizes dependency guardianship when "guardianship, rather than termination . . . would be in the best interest of the child." This is not a requirement that termination be first ruled out. Rather, it logically presupposes termination is an available option, to which guardianship is preferable.

[21] According to the *Washington Permanency Report 1998-2003*, 594 guardian- ships were established in 2002. *See* WASHINGTON PERMANENCY REPORT, *supra*, at 20.

[22] 3 WASH. STATE BAR ASS'N, WASHINGTON FAMILY LAW DESKBOOK § 59.7(1) cmt. (2d ed. 2000).

*Family Services*,[23] the Delaware Supreme Court considered whether a guardianship established under the Delaware general guardianship statute satisfied the permanency requirements of the federal Adoption and Safe Families Act of 1997 (ASFA).[24] With respect to guardianships, the ASFA is generally similar to the Washington statute, and defines guardianship as "intended to be permanent and self-sustaining as evidenced by the transfer to the caretaker of the following parental rights with respect to the child: protection, education, care and control of the person, custody of the person, and decisionmaking."[25] The Delaware court held that guardianships under the Delaware statute satisfied ASFA, and offered this rationale for guardianship as one of several appropriate placement options for children in care:

> When committed non-relative[26] foster parents wish a child to be a permanent part of their lives, but also wish the child to have continued interaction with its natural parents, termination of parental rights and adoption is not an option that is in the child's best interest. In these cases, a child is not in "limbo," and a standard guardianship can provide the kind of safe and stable environment that "rises to the level of permanency."[27]

The court further noted that guardianship may be modified or terminated only after a court considers "the overall best interests of the child,"[28] and observed that, while guardianship "is less legally secure than adoption, [it] is more permanent than foster care, and contains all the indicia of parental rights."[29]

---

[23] 834 A.2d 63 (Del. 2003).

[24] 42 U.S.C. §§ 620-679.

[25] 42 U.S.C. § 675(7). These are the same rights and responsibilities set forth in the Washington dependency guardianship statute, RCW 13.34.232(2)(a)-(e).

[26] The Delaware statutes apparently distinguish between relatives and nonrelatives for guardianship purposes. *See CASA*, 834 A.2d at 65 n.3.

[27] *Id*. at 66 (citation omitted).

[28] *Id*. at 67.

[29] *Id*.

The Nebraska Court of Appeals noted the propriety of guardianship as a possible option in reversing a termination of parental rights in *In re Heather G.*[30] There, the children were 12, 14 and 15. Although there was no likelihood either parent could establish a home for the children, nonetheless there was a strong bond between parents and children, the children were distressed at the possibility of termination, and the parents sought only continued visitation. Further, there was no evidence the children would be adopted upon termination, no evidence that parental contact was harmful, no evidence that termination would benefit the children, and no evidence the children would be deleteriously affected by the knowledge that they were not in a permanent placement.

The California Court of Appeals in *In re Kimberly S.*[31] was faced with the procedures for and the relative merits of kinship (open) adoption agreements, which are designed to facilitate continued contact with biological parents. The court observed that dependency guardianship offers "an alternative solution"[32] that allows for "continued parental involvement or continued relative placement with a relative unwilling or incapable of adopting."[33]

Despite some slight differences in statutes, these courts have identified a fairly consistent set of questions for determining the propriety of dependency guardianships for children in care: availability of a suitable guardian; desirability of continued involvement with the birth parents or with extended family; availability of guardianship versus probability of adoption; potential detriment to the children from termination of parental rights.

Washington courts should look to these factors, though not as an exclusive list. To summarize, in addition to the qualifications of the proposed guardian, considerations

---

[30] *In re Heather G.*, 12 Neb. App. 13, 30-32, 664 N.W.2d 488 (2003).

[31] 71 Cal. App. 4th 405, 83 Cal. Rptr. 2d 740 (1999).

[32] *Id.* at 413.

[33] *Id.* at 414 (citation omitted).

should include the strength and nature of the parent-child bond; the benefit of continued contact with the parent or the extended family; the need for continued state involvement and services; the likelihood the child would be adopted if parental rights were terminated, and any other case-specific factors relevant to the best interests of the child.

We now turn to the facts of this case. The trial court observed that, all things being equal, the State should look to family resources, and that for older children, established emotional ties can predominate. But the court noted that S.Y. and A.C. were young and had not seen their extended family since they left the Jacksons' home approximately 17 months earlier. The court found Chaffin "had little to no parenting history with regard to the children,"[34] that she had been unable to create a safe and stable home for herself or the children, and that the children had established relationships in their current placement, a potential adoptive home. The court found that another move would not be in their best interests.[35]

■ Substantial evidence supports these findings and we must therefore uphold them;[36] deference to the trial court is particularly important in appellate review of dependency

---

[34] Clerk's Papers at 492.

[35] The court erroneously referred to the previous version of the statute, stating that guardianship focuses on the best interests of the family rather than those of the child. This error does not, however, appear to have affected the court's reasoning. Chaffin contends the court took the view that guardianships generally could never offer permanency, citing the court's finding of fact 2.21: "The dependency guardianship proposed by the mother would not provide permanency and is not an appropriate plan for the children, although this is not due to any lack on the part of the proposed guardians, the Jacksons. It is simply that dependency guardianship itself would not provide the permanency these children need." Clerk's Papers at 494. But as the finding itself indicates, the court clearly considered whether guardianship was in the best interests of these particular children: "[W]hen evaluating the appropriateness of guardianship versus termination what courts often do is look to the age of the child, look to the resources that are available to the child, look to the basic needs of the child. . . . But it's [not a problem with the proposed guardians,] it's guardianship itself, which I believe is not indicated for these children." RP (Sept. 3, 2003) at 77, 79.

[36] K.S.C., 137 Wn.2d at 925.

decisions.[37] Substantial evidence therefore also supports the trial court's ultimate finding that guardianship is not in the children's best interest.

■ Finally, Chaffin contends the court failed to consider whether her relationship with the children, as opposed to her custody of them, was detrimental. She argues this is the only requirement that distinguishes termination from guardianship, and is therefore the linchpin for determining whether either termination or guardianship is appropriate.

As discussed above, the quality of the parent-child relationship is a factor in determining whether guardianship is called for. Whether continuation of the *legal* relationship between parent and child diminishes the child's chances of integration into a stable and permanent home is technically relevant only under the termination statute. But if a court has decided that guardianship is in the child's best interests, this question has been implicitly answered in the negative because guardianship provides a stable and permanent home while maintaining parental rights. If guardianship is not appropriate, the court must confront this question directly in determining whether to terminate parental rights and allow the opportunity for adoption.

Again, we give deference to the trial court's findings, and to its advantage in viewing the witnesses. Chaffin had a long history of drug treatment failure and a history of depression and suicide attempts. Although she had made great strides, her progress was recent and was marred by a relapse in early 2003. The evidence was that another move for the children—their fourth in 17 months—would be disruptive, and a potentially permanent placement was the home in which they lived. The court did consider whether a continued relationship was detrimental, and found it was.

The court acknowledged her struggles to recover, and observed that "Ms. Chaffin is making better decisions now than she's ever made."[38] But the court ruled that "with

---

[37] *In re Dependency of K.R.*, 128 Wn.2d 129, 144, 904 P.2d 1132 (1995).

[38] RP (Sept. 3, 2003) at 76.

respect to these children, time has run out."[39] The evidence supports this observation, and supports the finding that termination was in the children's best interests.

## CONCLUSION

We affirm termination of Chaffin's parental rights.

Cox, C.J., and COLEMAN, J., concur.