# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

IN RE DEPENDENCY OF K.L.G and K.J.G.,

Minor Children,

STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES,

Respondent,

v.

CYNTHIA GRAYSON,

Appellant.

No. 69464-2-I
Anchor w/ No. 69465-1-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: August 5, 2013

SPEARMAN, J. — Cynthia Grayson appeals the trial court order terminating her parental rights as to two of her children, K.L.G and K.J.G. Because the record supports the trial court's finding that the Department of Social and Health Services (Department) provided Grayson with all reasonably available, necessary services capable of correcting her parental deficiencies within the foreseeable future, we affirm.

## FACTS

Cynthia and Thomas Grayson were married in 1993 and divorced in 2007. They have five children, including 13 year old K.J.G. and 17 year old K.L.G. In 2003, Cynthia

began to develop an acrimonious relationship with one of her daughters, then age 13. According to Thomas, the acrimony escalated to the point where the police intervened, called him at work, and asked him to pick the daughter up. Thomas testified he and the children obtained an order of protection against Cynthia. He also testified that he and Cynthia began abusing drugs sometime in 2006. Thomas and Cynthia became increasingly violent toward each other, and exposed the children to this violence. At some point, the trial court entered an order of protection precluding Thomas from being in Cynthia's presence.

The Department filed dependency petitions in December 2006 based on Cynthia's and Thomas' methamphetamine abuse and domestic violence problems. In January 2007, Cynthia agreed to an order of dependency permitting supervised visitation and requiring her to participate in a domestic violence assessment, a psychological evaluation, and parenting classes.

At a November 2007 review hearing, the trial court found Cynthia had completed the psychological evaluation and parenting class. It ordered her to complete a one-year domestic violence program; participate in mental health counseling; participate in random urinalysis testing; complete a drug/alcohol evaluation and follow the recommendations; follow all requirements of her probation; comply with the no-contact order regarding the father; obtain and maintain a safe, stable, clean and sober living environment appropriate for the children; maintain weekly contact with the social worker; and address her legal matters including any warrants and charges.

At a May 2008 review hearing, the trial court found Cynthia was in compliance with services ordered and making progress toward reunification. The court's order again required Cynthia to continue with the services it previously ordered.

In October 2008, the court returned K.J.G. and two siblings not involved in this appeal to Cynthia's care. The court found she was in compliance with ordered services and making progress. The court again required Cynthia to continue with the services it previously ordered, and Cynthia was allowed unsupervised visits with K.L.G. The order also indicated K.L.G and another sibling could be returned to Cynthia's care when she received permanent housing through the YMCA Project Reunite program. This occurred in January 2009, and as such, K.L.G. was returned to Cynthia's care. In review hearings in February and July 2009, the trial court found Cynthia was in compliance with the ordered services.

In August 2009, however, Cynthia permitted Thomas to have unauthorized contact with the children, and as a result, the children were removed from Cynthia's care and placed in protective custody. Although Cynthia denied substance abuse at that time, she admitted to relapsing after the children were removed. At a September 2009 review hearing, Cynthia was ordered to: complete a drug/alcohol evaluation and follow all recommendations; participate in 12-step meetings; participate in random urinalysis testing; follow guidelines of the Pathways Housing Program; participate in domestic violence support groups; and complete a parenting assessment. She was required to

notify the Department of any obstacles to accessing court ordered services, and her visitation with the children was to be supervised.

Cynthia was never again found to be in full compliance with the services she was ordered to undertake. At review hearings in January, June, and December of 2010; in March and October 2011; and in April and August 2012, the court found Cynthia had only partially complied and was not making progress toward reunification. Cynthia's lack of compliance included multiple failures to complete substance abuse treatment, instances of domestic violence involving a new boyfriend, being arresting relating to an instance of domestic violence, failing to continue mental health counseling, and failing to show up for family counseling. She was also convicted of disorderly conduct, attempted domestic violence violation of a court order, and third degree theft. Additionally, a parenting assessment indicated Cynthia had severe anger management issues, shared inappropriate information with the children, had poor decision-making skills, and a high risk of using drugs and alcohol.

The Department filed petitions to terminate the parents' rights to K.L.G. and K.J.G. on September 2, 2010. K.L.G. and K.J.G. made it clear they wanted to be done with dependency proceedings, and wanted to remain in the foster home and be adopted by their foster family. Following a two-day trial, the court terminated Cynthia's parental rights as to K.L.G. and K.J.G. Thomas stipulated to the termination of his parental rights. Cynthia appeals.

4

## DISCUSSION

Standard of Review. The United States Constitution protects parental rights as a fundamental liberty interest. Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). To terminate a parent's rights, the Department must satisfy a two-pronged test. In re Dependency of K.N.J., 171 Wn.2d 568, 576, 257 P.3d 522 (2011). The first prong requires proof of the six factors enumerated in RCW 13.34.180(1):

(a) That the child has been found to be a dependent child;

(b) That the court has entered a dispositional order pursuant to RCW 13.34.130;

(c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;

(d) That the services rendered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;

(e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future;

. . . [and]

(f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.

The Department must prove these factors by clear, cogent, and convincing evidence. In re K.N.J., 171 Wn.2d at 576-77. If the Department satisfies the first prong, the court proceeds to the second prong, determining if termination is in the child's best interests. RCW 13.34.190(1)(b). The Department must prove this second prong by a

5

preponderance of the evidence. In re Welfare of A.B., 168 Wn.2d 908, 911, 232 P.3d 1104 (2010).

Because the fact finder has the advantage of observing the witnesses, deference to the trial court is particularly important in appellate review of termination decisions. In re Dependency of K.R., 128 Wn.2d 129, 141, 144, 904 P.2d 1132 (1995). We review a trial court's findings in a termination proceeding to determine if they are supported by substantial evidence. In re Dependency of T.R., 108 Wn. App. 149, 161, 29 P.3d 1275 (2001).

Services. Grayson's sole argument on appeal is that the Department failed to prove that it offered or provided her all reasonably available, necessary services capable of correcting her parental deficiencies within the foreseeable future. Specifically, although Grayson acknowledges the Department offered or provided her with all of the services listed on the dependency orders, she contends the Department should also have provided her with housing and employment services. We disagree for the reasons described herein.

Generally, the Department is not required to offer or provide services that would be futile. In re T.R., 108 Wn. App. at 163; In re Dependency of P.A.D., 58 Wn. App. 18, 26-27, 792 P.2d 159 (1990); In re Dependency of Ramquist, 52 Wn. App. 854, 861, 765 P.2d 30 (1988). Likewise, "a parent's unwillingness or inability to make use of the services provided excuses the state from offering extra services that might have been helpful." Ramquist, 52 Wn. App. at 861. In Ramquist, a mother with schizophrenia was

6

frequently incarcerated or committed, and the expert testimony indicated her parental deficiencies were untreatable. Id. As such, the Supreme Court held no additional services need have been offered. Id.

Here, the trial court entered the following findings of fact relating to Grayson's inability or unwillingness to make use of the services provided, all of which are unchallenged and therefore verities on appeal, Keever & Associates, Inc. v. Randalls, 129 Wn. App. 733, 741, 119 P.3d 926 (2005):

> 2.12 The court heard from Norman Nelson, the provider that provided mental health counseling to the mother as ordered. The mother participated in that service with Mr. Nelson in good faith. Mr. Nelson provided 45 counseling sessions to the mother up to July 2010. In February 2012 Mr. Nelson received a request from the Department social worker to restart counseling with the mother. Mr. Nelson declined the referral because he opined that further Cognitive Behavioral Therapy (CBT) was not going to help the mother.

> . . .

> 2.14 The court finds that the mother's testimony is not credible.

> 2.15 The mother continues to associate with drug users, and continued to use methamphetamine. Her last reported use was on December 5, 2011, prior to being incarcerated. She was subsequently incarcerated again and only released a few weeks prior to this trial.

> . . .

> 2.17 After the second removal of the children the mother participated in two substance abuse evaluations. The second one in January 2012, recommended intensive inpatient treatment. . . . The mother testified that she became ineligible for funding, however, she was eligible at the time of the evaluation and had the opportunity to participate in treatment. If she did not participate in treatment it was because of her own actions and conduct.

> 2.18 The mother requested several times to participate in family counseling with [K.L.G.], but the court is not satisfied that

7

> counseling would change [K.L.G.]'s position, or the facts of the
> case: There were years of the mother's selfish bad decisions,
> not taking into account the needs of her children. The
> Department tried to set up the counseling in March 2012, and
> [K.L.G.]'s attorney persuaded [K.L.G.] to participate, but the
> mother failed to attend.

Clerk's Papers (CP) at 45 (emphasis added).

The trial court also found that Grayson's eventual unemployment and homelessness was a direct result of her conduct, bad decision-making, and substance abuse:

> 2.21 The mother acknowledges that she has unresolved
> substance abuse issues, and that she needs further
> treatment. Due to the mother's conduct and bad decision-
> making she is homeless, unemployed, and just recently out of
> jail. She acknowledges that she is currently unable to parent
> her children, and when asked was unable to state when in the
> future she would be.

CP at 45. Although Grayson challenges this finding of fact, it is supported by substantial evidence in the record, including Grayson's own testimony that she had not returned to substance abuse treatment, that she was recently out of jail, and that she was currently unable to parent her children. The finding is also supported by the testimony of her therapist, Norman Nelson, who indicated Grayson's behavior eventually became "out of control":

> [I]t appeared to me that things had regressed. Issues were
> becoming more pronounced, that her behavior was becoming out of
> control, associating with people that are not healthy. Her residential
> situation appeared to be a crisis. She was totally estranged from
> her children. Her children were withdrawing from her. She was not
> involved with her drug recovery, and I thought things were
> deteriorating.

Verbatim Report of Proceedings (VRP) 9/26/12 at 50.

8

In sum, the trial court's findings of fact establish that Grayson, through her own poor decision-making, was unwilling or unable to follow through with the mental health counseling and substance abuse related services offered by the Department, and that her unwillingness to follow through led directly to her homelessness and unemployment. As was the case with the parent in Ramquist, Grayson's "unwillingness or inability to make use of the services provided excuses the state from offering extra services that might have been helpful." In re Ramquist, 52 Wn. App. at 861 (quoting In re Welfare of Ferguson, 41 Wn. App. 1, 6, 701 P.2d 513 (1985)). As such, we reject Grayson's argument that the Department failed to offer or provide her with services able to correct her parental deficiencies in the foreseeable future.

Affirmed.

WE CONCUR: