IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Dependency of | No. 82382-5-I |
| R.S.H. | DIVISION ONE |
| A minor child. | UNPUBLISHED OPINION |

SMITH, J. — The father, M.A.H., appeals the termination of his parental rights with respect to his son, R.S.H.  The father contends that because the Department of Children, Youth, and Families (Department) failed to provide him a necessary and court-ordered psychological evaluation with a parenting component, the court order terminating his parental rights must be reversed.  We conclude that the Department met its obligation by offering the father the psychological evaluation and affirm the termination of parental rights.

FACTS

In April 2017, while the father was incarcerated, the court placed his children, R.S.H. and two daughters, with relatives after an initial shelter care hearing.  However, R.S.H. was moved from his grandmother's home to a non-relative foster care home.

In August 2017, while still incarcerated, the father entered into an agreed order of dependency with respect to R.S.H.  The court ordered the father to participate in remedial services such as a drug and alcohol evaluation, a

Citations and pin cites are based on the Westlaw online version of the cited material.

psychological evaluation with a parenting component due to his PTSD,[1] and domestic violence batterer's treatment. After the dependency was established, a social worker, Denise Huynh, met with the father to discuss the services he needed to complete. Huynh referred the father to Dr. Sierra Swing for the psychological evaluation. The father was released from prison later that month. However, Dr. Swing was not immediately available for an appointment. When Dr. Swing did become available, Huynh had lost contact with the father.

Huynh later learned that the father was incarcerated again, and Dr. Swing was unwilling to go to jail to complete the evaluation. In November 2017, Xiao Yu Jackson, a Department supervisor, visited the father while he was in jail and encouraged him to seek services while in jail. In December 2017, the father was released from jail, but shortly after was hospitalized for a gunshot wound and then incarcerated again. It took about a month for Huynh to determine that the father was incarcerated again.

While incarcerated, the father attended permanency planning and dependency review hearings. In February 2018, the father attended his children's permanency planning hearing. However, at the review hearings, the dependency court repeatedly found that the father was not making progress in his remedial service plan. In March 2018, the father was out of custody and participating in a work release program. The father contacted Jackson in June 2018 and asked about visitation with his children. The father's last visit with his

---

[1] The father has been diagnosed with post-traumatic disorder (PTSD) based on his childhood experiences during Somalia's civil war.

children was in June 2018.

Towards the end of 2018, the father was incarcerated again. The father remained incarcerated from the end of 2018 until he was released in September 2019. The father was out of custody for three weeks until he was arrested and incarcerated again in October 2019. From October 2019 until the termination trial in January 2021, the father remained incarcerated. In August 2019 Huynh referred the father to different providers for the substance abuse evaluation, urinalysis testing, and domestic violence treatment. The father told the social worker that he was familiar with these providers.

In February 2020, Jackson met with the father at the Maleng Regional Justice Center and encouraged him again to participate in services. Jackson also instructed the father to contact his attorney and select a new agreed upon provider for the psychological evaluation. In March 2020, the Department referred the father for a psychological evaluation with Dr. Steve Tutty. However, Dr. Tutty was not able to go to the prison to perform the evaluation because of COVID-19 restrictions.

In March 2020, the Department filed a petition to terminate the father's parental rights. From June through August 2020, Department social worker Kate Kersey sent three service letters to the father regarding his remedial court-ordered services. The letters also acknowledged that while the father was incarcerated at the Washington State Penitentiary there were "no known resources" for pursuing his court-ordered services. During normal times, treatment program meetings are available, but these meetings were not

3

available to the father while he was incarcerated due to the pandemic.

In January 2021, at the termination trial, the father acknowledged that he never started any of the services required of him, which included a substance abuse evaluation followed by compliance with any treatment recommendations, urinalysis testing, participation in a domestic violence treatment program, and a psychological evaluation with a parenting component. When asked whether he had made any progress in the services, the father testified, "[a]bsolutely not." During the trial, the father voluntarily relinquished his parental rights to his two daughters, S.H. and A.H. After hearing three days of testimony and considering multiple exhibits, the trial court terminated the father's parental rights to his remaining child, R.S.H. The father appeals.

ANALYSIS

The father asserts that we must reverse the court order terminating his parental rights because the Department failed to provide the necessary and court-ordered service of a psychological evaluation. We disagree.

Parents have a fundamental liberty interest in the "care, custody, and management" of their children. Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); In re Welfare of D.E., 196 Wn.2d 92, 102, 469 P.3d 1163, 1168 (2020). In a trial for termination of parental rights, the Department is required to prove that the court-ordered services "have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided."

RCW 13.34.180(1)(d). If a parent is incarcerated, the Department must, where possible, specify "treatment that reflects the resources available at the facility where the parent is confined." RCW 13.34.136(2)(b)(i)(A). "When the State suggests remedial services to a parent, it has an obligation under [former] RCW 13.34.180(4) [(1979)] to at least provide him or her with a referral list of agencies or organizations which provide the services."[2] In re Welfare of Hall, 99 Wn.2d 842, 850, 664 P.2d 1245 (1983). The Department fails its obligation when it delays in providing a service that results "in the Department ultimately never providing the service." In re Parental Rights to D.H., 195 Wn.2d 710, 726, 464 P.3d 215 (2020). However, "a parent's unwillingness or inability to make use of the services provided excuses" the Department from offering additional services. In re Dependency of Ramquist, 52 Wn. App. 854, 861, 765 P.2d 30 (1988). "[E]ven where the Department 'inexcusably fails' to offer services to a willing parent, termination will still be deemed appropriate if the services 'would not have remedied the parent's deficiencies in the foreseeable future.'" In re Welfare of M.R.H., 145 Wn. App. 10, 25, 188 P.3d 510 (2008); In re Dependency of T.R., 108 Wn. App. 149, 164, 29 P.3d 1275 (2001).

We will uphold the trial court's factual findings if they are supported by substantial evidence, and if so, we determine whether the findings support the court's conclusions of law and judgment. In re Dependency of P.D., 58 Wn. App. 18, 25, 792 P.2d 159 (1990). "Substantial evidence is evidence in sufficient quantity to persuade a fair-minded, rational person of the truth of the declared

---

[2] Former RCW 13.34.180(4) is now codified at RCW 13.34.180(1)(d).

premise." In re Welfare of T.B., 150 Wn. App. 599, 607, 209 P.3d 497 (2009). We evaluate whether there is substantial evidence in light of the standard of proof required, which in a termination proceeding is "clear, cogent, and convincing evidence." P.D., 58 Wn. App. at 25, RCW 13.34.190.[3]

Here, the Department offered the services as required by RCW 13.34.180(1)(d). The Department referred the father to providers for substance abuse evaluation and treatment, urinalysis testing, and a domestic violence treatment program. The trial court found that he failed to present any evidence or verification of his participation in any of the services. As for the psychological evaluation, the Department fulfilled its obligation. The Department referred the father to Dr. Swing and Dr. Tutty. However, Dr. Swing was not able to conduct the evaluation because the father was incarcerated, and Dr. Tutty was not allowed in the jail to conduct the evaluation due to the jail's pandemic restrictions. Additionally, Jackson continuously encouraged the father to participate in services. We conclude that there is clear, cogent, and convincing evidence to support the court's finding that the Department has fulfilled its obligation to offer necessary services. Hall, 99 Wn.2d at 850 (Department has an obligation to "at least provide him . . . with a referral list of agencies or organizations which provide the services.").

---

[3] On appeal, the father assigned error to some of the trial court's findings about these issues. However, in his brief, he abandons all of these challenges and focuses only on whether the necessary and court-ordered psychological evaluation with the parenting component was expressly and understandably offered or provided. "A party that offers no argument in its opening brief on a claimed assignment of error waives the assignment." Brown v. Vail, 169 Wn.2d 318, 336 n.11, 237 P.3d 263 (2010).

Furthermore, the father failed to complete the services while he was not incarcerated or take advantage of the services available during the several months he was incarcerated before the pandemic. The father did not communicate or inform the Department of his location when he was released from incarceration and indicated that he felt it was not his responsibility to do so. Department social workers testified that there were time periods that they did not know where the father was located and at times had no way of reaching him. The father's unwillingness to participate in the services offered and his lack of communication excuses the Department from providing additional services that might have been helpful. Ramquist, 52 Wn. App. at 861.

Lastly, even if we were to determine that the Department's efforts to arrange for a psychological evaluation were inadequate, it does not appear that the psychological evaluation would have remedied the father's deficiencies in the foreseeable future because the evaluation was not a remedial service, but was rather an assessment of his psychological status and his parenting capabilities. The trial court found that there was little likelihood that the father's conditions would be remedied so that R.S.H. could return to him, and due to the child's young age and developmental needs, the "near future" for the five-year-old boy to establish permanency is imminent. The father admitted that he never even started any of the services required by him that were meant to remedy his parental deficiencies. M.R.H., 145 Wn. App. at 25 ("Where the record establishes that the offer of services would be futile, the trial court can make a finding that the Department has offered all reasonable services.").

Therefore, under the totality of the circumstances, we conclude that the Department's efforts were sufficient. The Department's attempts at referrals, the father's unwillingness to maintain contact with the Department, his failure to engage in the services while not in custody, and the unavailability of services due to COVID-19 support the trial court's finding that the Department understandably offered or provided all necessary and reasonably available services capable of correcting the father's parental deficiencies within the foreseeable future. We affirm.

WE CONCUR: