IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Dependency of L.A.C, DOB: 7/14/2004, | No. 78713-6-I |
| | |
| STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | DIVISION ONE |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| ROBERT L. CALDWELL, | |
| Appellant. | FILED: April 22, 2019 |

CHUN, J. — Robert L. Caldwell appeals an order terminating his parental rights to his daughter. He contends substantial evidence does not support the trial court's finding that (1) the Department of Children and Youth Services (Department)[1] offered or provided all court-ordered and necessary services capable of remedying his parental deficiencies, (2) there is little likelihood he would remedy his parental deficiencies in the near future, and (3) he is currently unfit to parent his daughter. Caldwell also contends the trial court erred in finding termination of his parental rights to be in his daughter's best interest. We affirm.

---

[1] At the time of the termination hearing, the agency was named the Department of Social and Health Services. See RCW 43.216.906.

I.
BACKGROUND

Caldwell is the father of three children: L.A.C. (age 13), J.C. (age 12), and C.C. (age 9).[2] The parental rights of the children's mother and Caldwell's parental relationship with J.C. and C.C. are not at issue in this appeal.[3]

Between June 2011 and June 2015, the Department received numerous referrals regarding the safety of Caldwell's children.[4] On November 18, 2015, the Department received allegations that Caldwell's children were residing in poor living conditions with drug paraphernalia within reach of the children. A Department social worker later interviewed the children at school and noted that, according to the children, Caldwell did not enforce a particular bedtime, yelled at them, and spanked them. On December 4, 2015, the children's school informed the Department that the children had not attended school since their interviews with the social worker.

On January 13, 2016, the Department filed a dependency petition as to all three children. On April 4, 2016, Caldwell agreed with the Department to the entry of an order of dependency and "acknowledge[d] that he has parenting deficits involving domestic violence, substance abuse, and mental health, and that these deficits negatively impact his capability to adequately care for the child." The court ordered that the children be removed from Caldwell's care and

---

[2] These were the children's ages at the time of the termination hearing.

[3] The mother has not appealed the termination of her parental rights to the children. Additionally, the trial court did not terminate Caldwell's parental rights as to J.C. or C.C.

[4] These referrals as to Caldwell allege that he engaged in domestic violence, physically neglected the children, withheld the children from school, discouraged the children from completing homework assignments, intimidated the children's teachers, failed to provide the children with enough food to eat, and abused drugs and alcohol in the children's presence.

placed them in foster care. Caldwell agreed to a dispositional plan requiring him to participate in a substance abuse evaluation, random urinalyses (UAs), a psychological evaluation with a parenting component, a domestic violence batterer's assessment, a mental health assessment, and parenting instruction. Among other things, the court's dependency order required Caldwell to maintain safe and sober housing suitable for the care of a child, maintain regular contact with the Department's social worker and guardian ad litem (GAL), and contact the Department if "financial assistance or funding is needed to complete any" services or compliance requirements.

On March 30, 2017, the Department filed petitions to terminate Caldwell's rights as to each child, alleging in relevant part, that all ordered and necessary services have been offered or provided and there is little likelihood that conditions will be remedied so that the children could be appropriately returned to Caldwell within the near future.

The termination hearing took place over several days in April and May, 2017. At the hearing, the trial court considered the testimony of Caldwell, Caldwell's probation officer, Caldwell's psychiatric nurse practitioner, three Department social workers, a clinical supervisor at Catholic Community Services, Caldwell's counselor at Compass Mental Health, the parents of Caldwell's girlfriend who owned the residence where Caldwell was living, the children's GAL, Caldwell's girlfriend, Caldwell's treatment provider at Violence Intervention Professionals, and admitted 33 exhibits into evidence. Separate counsel on behalf of L.A.C. and J.C. presented their respective preferences at the hearing.

3

On June 21, 2018, the trial court entered findings of fact, conclusions of law, and an order terminating Caldwell's parental rights as to L.A.C. The trial court made the following pertinent findings, which Caldwell does not challenge:

2.8 A dependency dispositional order was entered pursuant to RCW 13.34.130 and incorporated into the Order of Dependency entered in this matter on April 4, 2016, as to the father and February 16, 2016, as to the mother.

2.9 The child's dependent status has been reviewed by the court on May 9, 2016, October 24, 2016, October 24, 2016 [sic], October 31, 2016, April 24, 2017, October 30, 2017 and last on April 23, 2018. The next regularly scheduled dependency review hearing is set for October 9, 2018.

2.10 The child has been removed from the custody of the parents for over six months pursuant to a finding of dependency under RCW 13.34. On January 13, 2016, the child was placed in out of home care, and the child has remained in an out-of-home placement until the present time.

. . .

2.13 Continuation of the parent-child relationship clearly diminishes the child's prospect for early integration into a stable and permanent home. The continuation of the status quo is not in the child's best interests and a resolution is needed as to who will be this child's permanent caretaker. The child's needs for permanence and stability must, at this point in time, be accorded priority over the rights of the biological parents in order to foster the early integration of the child into a stable and permanent home as quickly as possible.

A. [Caldwell's] gaps in visitation coincided with his significant gaps in participating in services.

B. [L.A.C.], the child, places a great value on stability and neither parent has shown stability. She clearly loves her parents, but needs more stability than any extended dependency situation would allow. [L.A.C.] has indicated that she wants to be adopted.

Caldwell now appeals. We discuss additional facts in the relevant sections below.

II.
## STANDARD OF REVIEW

The United States Constitution protects parental rights as a fundamental liberty interest. Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). To terminate a parent's rights, the Department must satisfy a two-pronged test. In re Dependency of K.N.J., 171 Wn.2d 568, 576, 257 P.3d 522 (2011). The first prong requires the Department to prove the six factors set forth in RCW 13.34.180(1).[5] The Department must prove these factors by clear, cogent, and convincing evidence. K.N.J., 171 Wn.2d at 576-77. Clear, cogent, and convincing evidence exists when it shows that an ultimate fact in issue is highly probable. In re Dependency of K.R., 128 Wn.2d 129, 141, 904 P.2d 1132 (1995).

Once the Department proves the six statutory factors of RCW 13.34.180(1), the trial court must then make a finding of current unfitness before parental rights can be terminated. In re Parental Rights to K.M.M., 186 Wn.2d 466, 479, 379 P.3d 75 (2016) (citing K.R., 128 Wn.2d at 149). While the trial court need not make this finding explicitly, K.M.M., 186 Wn.2d at 479 (citing K.R., 128 Wn.2d at 142-43),[6] the Department is "required to prove that the

---

[5] RCW 13.34.180(1) requires the Department to prove (a) the child has been found to be a dependent child; (b) the court has entered a dispositional order pursuant to RCW 13.34.130; (c) the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency; (d) the services rendered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided; (e) there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future; and (f) continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.

[6] "Satisfying all six of the statutory elements raises an implied finding of parental unfitness." K.M.M., 186 Wn.2d at 479 (citing K.N.J., 171 Wn.2d at 577).

parent's parenting deficiencies prevent the parent from providing the child with 'basic nurture, health, or safety' by clear, cogent, and convincing evidence." In re Welfare of A.B., 181 Wn. App. 45, 61, 323 P.3d 1062 (2014) (citing RCW 13.34.020)

If the Department satisfies the first prong, the court proceeds to the second prong and determines whether termination is in the child's best interests. See RCW 13.34.190(1)(b). The Department must prove this second prong by a preponderance of the evidence. In re Welfare of A.B., 168 Wn.2d 908, 911, 232 P.3d 1104 (2010).

If substantial evidence supports the trial court's findings, we must affirm the termination order. In re Dependency of T.R., 108 Wn. App. 149, 161, 29 P.3d 1275 (2001). "'[E]vidence is substantial if, when viewed in the light most favorable to the party prevailing below, it is such that a rational trier of fact could find the fact in question by a preponderance of the evidence.'" In re Dependency of E.L.F., 117 Wn. App. 241, 245, 70 P.3d 163 (2003) (alteration in original) (quoting In re Dependency of M.P., 76 Wn. App. 87, 90-91, 882 P.2d 1180 (1994)).

On review, we do not make credibility determinations or weigh the evidence. In re Welfare of C.B., 134 Wn. App. 942, 953, 143 P.3d 846 (2006). "Deference paid to the trial judge's advantage in having the witnesses before him [or her] is particularly important in deprivation proceedings." In re Welfare of Aschauer, 93 Wn.2d 689, 695, 611 P.2d 1245 (1980). If a trial court has resolved conflicting evidence, we will not substitute our judgment for that of the

trial court, even if we would have resolved a factual dispute differently. <u>Mairs v. Dep't of Licensing</u>, 70 Wn. App. 541, 545, 854 P.2d 665 (1993).

We consider unchallenged findings as verities on appeal. <u>In re Dependency of J.M.R.</u>, 160 Wn. App. 929, 939 n.5, 249 P.3d 193 (2011).

III.
ANALYSIS

A. Court-Ordered and Necessary Services

Caldwell argues the Department did not offer or provide him with court-ordered parenting assessment services and necessary parenting instruction services. Thus, he contends the trial court erred in finding that the Department fulfilled its obligation to provide such services pursuant to RCW 13.34.180(1)(d). We disagree.

To meet its burden under RCW 13.34.180(1)(d), the Department is obligated to provide all the services ordered by the permanency plan, as well as "all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future." RCW 13.34.180(1)(d). Additionally, the Department is required to specify in a permanency plan "what services the parents will be offered to enable them to resume custody." RCW 13.34.136(2)(b)(i). A service is necessary if it is "needed to address a condition that precludes reunification of the parent and child." <u>In re Parental Rights to I.M.-M.</u>, 196 Wn. App. 914, 921, 385 P.3d 268 (2016).

The Department must prove it offered services specifically tailored to the individual parent's needs. <u>In re Dependency of D.A.</u>, 124 Wn. App. 644, 651,

102 P.3d 847 (2004). However, the Department is not obligated to offer services that might be helpful if the parent is unwilling or unable to make use of available services.[7] In re Dependency of Ramquist, 52 Wn. App. 854, 861, 765 P.2d 30 (1988).

Here, the trial court entered the following findings regarding services the Department offered or provided Caldwell:

> 2.11 Since dependency was established, services ordered under RCW 13.34.130 have been offered or provided and all necessary services reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been offered or provided. These services included the following as to the father: a substance abuse evaluation, drug and alcohol treatment as recommended, random urinalysis, a mental health assessment, mental health services, domestic violence batterer's assessment and treatment, and age-appropriate parenting instructions.

> A. The Department also offered a parenting assessment to [Caldwell] late in the case, after the petition for termination of parental rights was already filed. While the completed assessment would likely have provided more information to the court, the Court [sic] does not find that this was a necessary service; completion of the parenting assessment would not have helped [Caldwell] improve his parenting.

> B. Despite the finding that the parenting assessment was not a necessary service, the Department did offer it. Testimony showed that [Caldwell] and his attorney met in person with the assigned caseworker to talk about the assessment and, at the meeting, [Caldwell] agreed to participate in the assessment. The professionals identified to provide the assessment tried to reach [Caldwell] after the referral was made, but no one was able to reach [Caldwell].

---

[7] The Department is not required to offer or provide services that would be futile. See In re Welfare of C.S., 168 Wn.2d 51, 56 n.2, 225 P.3d 953 (2010) ("'Where the record establishes that the offer of services would be futile, the trial court can make a finding that the Department has offered all reasonable services.'") (quoting In re Welfare of M.R.H., 145 Wn. App. 10, 25, 188 P.3d 510 (2008)).

During the dependency and termination periods, Caldwell resided in Whatcom County. L.A.C., however, resided in a foster placement located in Pierce County. In an October 30, 2017 permanency planning order, the court ordered the "father shall complete a parenting evaluation [with] a provider agreed upon by the parties as provided by statute." A parenting assessment requires a parent to attend three, in-person sessions, one of which includes parent-child observation. After meeting with Caldwell on November 30, 2017, the Department referred Caldwell, on December 7, 2017, to a parenting assessment provider roughly 120 miles away in Pierce County.

Caldwell argues now, as he did at the termination hearing, that the Department did not meaningfully offer this service because it did not refer him to a local (Whatcom County) parenting assessment provider. While we note the geographical distance between Caldwell's residence and the location of the parenting assessment provider, as well as Caldwell's transportation difficulties,[8] substantial evidence supports the trial court's finding on this factor.

First, when discussing the referral for the parenting assessment with the Department's social worker, Caldwell agreed to the Pierce County service provider. He did not object to traveling to Pierce County for this service nor did he specifically request a Whatcom County service provider.

---

[8] The record shows that Caldwell did not have a valid driver's license during the dependency and termination periods. In June 2016, the Department arranged for Caldwell to travel to Pierce County for visits with the children via Greyhound bus and a hotel stay, but this did not work for Caldwell. Then a volunteer transporter drove Caldwell to Pierce County to facilitate visits until March 2017. After that point, Caldwell began to get rides from others to Pierce County and the Department accommodated this method of transportation by providing him gas vouchers. However, Caldwell would at times report experiencing car difficulty.

Second, the record shows that the Department attempted to accommodate Caldwell's transportation barriers for this service. When the Department asked Caldwell to have a discussion about his transportation to Pierce County, Caldwell responded "all he needed was a gas voucher." The Department social worker even informed Caldwell that she would transport him to the parent-child observation session. Caldwell failed to engage in the parenting assessment service and the Department renewed the referral for that service in February 2018, as the initial referral expired after 90 days. Caldwell then requested gas vouchers to attend the parenting assessment and the Department provided them. However, Caldwell did not use the gas vouchers as authorized because he never actually attended the parenting assessment.

Third, for several months, the Department repeatedly encouraged Caldwell to attend the required parenting assessment service, yet he never participated. When asked why he failed to attend any of the parenting assessment sessions, Caldwell testified "[b]ecause we had car problems" and "[b]ecause of life, that's why, other stuff." A parent's failure to engage in offered services relieves the Department of its obligation to provide additional services. Ramquist, 52 Wn. App. at 861.

Caldwell next argues that the trial court's oral ruling on this factor contradicts its written ruling. In its oral ruling, the trial court expressed that it did not "find the parenting assessment was reasonably offered because of the logistical problems that were presented." However, the written order finds that the Department offered the service. We reject this argument. We do so because

a trial court's oral ruling "'is no more than an expression of its informal opinion at the time it is rendered.'" State v. Friedlund, 182 Wn.2d 388, 394, 341 P.3d 280 (2015) (quoting State v. Mallory, 69 Wn.2d 532, 533-34, 419 P.2d 324 (1966)). Only the trial court's written ruling constitutes "a final order subject to appeal." Friedlund, 182 Wn.2d at 395.

Finally, Caldwell argues that the Department failed to provide him with additional parenting instructions, which he claims was a necessary service. The record does not support his position. Rather, the record shows that Caldwell completed an eight-week parenting instruction course in June 2017. While the Department acknowledged that Caldwell would benefit from some additional parenting classes, such classes were appropriate only if, and or when, Caldwell's reunification with the children was imminent. The record shows that Caldwell did not progress enough for an imminent reunification with L.A.C.

In view of this record, we conclude substantial evidence supports the trial court's findings that the Department offered or provided court-ordered and necessary and reasonably available services capable of correcting parental deficiencies within the foreseeable future and that any additional service referrals would be futile.

B. Likelihood Parental Deficiencies will be Remedied

Caldwell contends that the Department failed to prove that there was little likelihood that his parental deficiencies could be remedied in the near future.

Therefore, he claims the trial court erred when it entered the following finding in the termination order:

2.12  Given the 16 months of services offered or provided, there is little likelihood that the conditions will be remedied so that the child could be returned to the mother or father in the near future.

A. Although [Caldwell] began this case in a hostile manner, he completed in-patient chemical dependency treatment in early 2016, his attitude changed and he became more cooperative and participatory in all services for a time.

B. [Caldwell] was on the verge of significant changes, but service providers all reported significant gaps in [Caldwell's] participation in services between June 2016 and October 2017. The providers all consistently reported that they did not hear from [Caldwell] during those gaps in services and report that [Caldwell] did not complete any of these services.

C. [Caldwell] had a significant gap in his chemical dependency treatment between September, 2016 and March, 2017 and then again between May, 2017 and October, 2017. These gaps give the Court great concern. [Caldwell] does report that he attends sober support groups. The testimony shows that such support groups can be beneficial, but the professional recommendations if [sic] for more significant care than that. The lapse in [Caldwell's] chemical dependency treatment also coincided with at least three relapses in 2016, 2017 and 2018.

The focus of the RCW 13.34.180(1)(e) "little likelihood" factor is "whether parental deficiencies have been corrected." K.R., 128 Wn.2d at 144. If the Department proves that all necessary services reasonably capable of correcting the parental deficiencies within the foreseeable future were offered or provided, and the parental deficiencies are not substantially improved within 12 months of the dependency order, a rebuttable presumption arises that this factor is established. See RCW 13.34.180(1)(e).

Here, Caldwell argues that he made significant progress in his services such that L.A.C. could be returned in six months. However, there is substantial

evidence in the record to support the trial court's finding on this factor. In its termination petition, the Department identified the following parental deficiencies that Caldwell did not correct during the dependency: "ongoing substance abuse, untreated mental health issues, domestic violence perpetrator and victim's issues, a lack of parenting skills and the inability to maintain or provide a safe, stable and sober home environment for the child."

At the termination hearing, the Department presented testimony from Caldwell's probation officer that Caldwell had consumed alcohol in December 2017 and January 2018, Caldwell would need to successfully comply with probation requirements for at least seven to eight more months to satisfy his probation and, throughout the dependency, Caldwell actively consumed alcohol and failed to complete formal chemical dependency treatment. Caldwell's treatment provider at Violence Intervention Professionals testified that, based on his assessment, he determined Caldwell to be at a high risk of recommitting domestic violence. This provider concluded that Caldwell "was in need of and would benefit from attending" domestic violence treatment program. However, although Caldwell initially engaged in such a program, this provider explained that Caldwell did not complete the domestic violence treatment course because he "just stopped . . . coming to class." Caldwell had a significant gap in his domestic violence treatment from September 2016 to February 2018.

The Department also presented evidence that Caldwell did not complete the required mental health treatment. Caldwell's counselor at Compass Health testified that Caldwell attended only four mental health therapy sessions between

November 2017 and April 2018, and had missed several other appointments, which delayed or prevented his progress in treatment. This counselor testified Caldwell made little progress in addressing his mental health issues and that it would be difficult for Caldwell to address those issues without attending formal treatment.

At the time of the termination hearing, Caldwell had not yet completed several of the services required to address his parental deficiencies. In short, based on the evidence presented at the termination hearing, Caldwell still had more work to do in overcoming his substance abuse, domestic violence, mental health issues, and remedying his parental deficiencies. The trial court did not err in its finding as to the RCW 13.34.180(1)(e) factor.

Caldwell also argues that the trial court did not adequately find or determine what amount of time constitutes "near future" with regard to this factor. What constitutes the near future depends on the particular circumstances, including the age of the child, placement history, length of time the child has been out of the parent's care, and the amount of contact with the parent. C.B., 134 Wn. App. at 954 (citing In re Dependency of T.L.G., 126 Wn. App. 181, 205, 108 P.3d 156 (2005)).

Here, at the time of the termination hearing, L.A.C. had lived in foster care for more than two years. The GAL testified that it was in L.A.C.'s best interests to have her parent's rights terminated given L.A.C.'s need for stability and

permanence. Substantial evidence supports the trial court's finding on this factor.

## C. Current Parental Unfitness

Next, Caldwell contends the trial court's finding of current unfitness is not supported by substantial evidence. Thus, he argues the following termination finding constitutes error:

> 2.15 The mother and father are currently not fit to parent the child. The Department has identified the following parental deficiencies that have not been corrected and necessitate termination of parental rights: ongoing substance abuse, untreated mental health issues, domestic violence perpetrator and victims' issues, a lack of necessary parenting skills and the inability to maintain or provide a safe, stable and sober home environment for the child. Because of these deficiencies, the father was unable to understand and was incapable of providing for the child's emotional, physical, mental and developmental needs. The father is incapable of safely parenting the child.

In view of the trial court's unchallenged findings of fact and our analysis above, we conclude that the Department satisfied its burden of proving all six statutory factors of RCW 13.34.180(1). And because satisfying all six statutory factors raises an implied finding of parental unfitness, K.M.M., 186 Wn.2d at 479, we conclude that substantial evidence supports the trial court's explicit finding of Caldwell's current parental unfitness.

## D. Best Interests of the Child

Lastly, Caldwell disputes the trial court's finding that termination of his parental rights is in L.A.C.'s best interests.[9] He simply argues that the trial court

---

[9] Here, the trial court made the following finding as to the best interests of L.A.C.: "Termination of the parent-child relationship is in the best interests of the child to allow adoption planning to begin and to foster the creation of a stable and permanent placement for the child."

should not have reached this prong of the analysis because the Department failed to establish RCW 13.34.180(1)(d) and (3) by clear, cogent, and convincing evidence.

We consider the facts and circumstances of each individual case to determine the child's best interests. In re Dependency of A.V.D., 62 Wn. App. 562, 572, 815 P.2d 277 (1991) (citing Aschauer, 93 Wn.2d at 695). Therefore, we place a "'*very strong* reliance on trial court determinations of what course of action will be in the best interests of the child.'" In re Pawling, 101 Wn.2d 392, 401, 679 P.2d 916 (1984) (quoting In re Welfare of Todd, 68 Wn.2d 587, 591, 414 P.2d 605 (1966)). Without question, "a child has the right to basic nurturing, which includes the right to a safe, stable, and permanent home and the speedy resolution of dependency and termination proceedings." T.R., 108 Wn. App. at 154 (citing RCW 13.34.020). If the child's rights conflict with the parent's rights, the child's rights should prevail. RCW 13.34.020.

Here, Caldwell does not dispute the trial court's finding of fact 2.13, stating in part, "[t]he continuation of the status quo is not in the child's best interests and a resolution is needed as to who will be the child's permanent caretaker." Nor does he challenge the court's finding at 2.13(B) that L.A.C. "places a great value on stability and neither parent has shown stability. She clearly loves her parents, but needs more stability than any extended dependency situation would allow. [L.A.C.] has indicated that she wants to be adopted." We accept these findings as true.

"Where a parent has been unable to rehabilitate over a lengthy dependency period, a court is 'fully justified' in finding termination in the child's best interests rather than 'leaving [the child] in the limbo of foster care for an indefinite period'" while the parent attempts rehabilitation. T.R., 108 Wn. App. at 167 (quoting In re A.W., 53 Wn. App. 22, 33, 765 P.2d 307 (1988)). While Caldwell has expressed genuine love for L.A.C., he has not shown progress in addressing his parental deficiencies. Accordingly, the preponderance of the evidence supports the trial court's best interests finding.

We affirm.

_Chun, C.J._

WE CONCUR:

17