IN THE SUPREME COURT OF THE STATE OF DELAWARE

JULIAN LANG-LARSON,[1]        §
                              § No. 413, 2022
     Respondent Below,     §
     Appellant,              § Court Below—Family Court
                              § of the State of Delaware
     v.                         §
                              § File No. CN22-04-02TS
DEPARTMENT OF SERVICES FOR    § Petition No. 22-08361
CHILDREN, YOUTH & THEIR       §
FAMILIES/DIVISION OF FAMILY    §
SERVICES,                    §
                              §
     Petitioner Below,      §
     Appellee.              §

Submitted: April 12, 2023
Decided: May 31, 2023

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## ORDER

Upon consideration of the appellant's brief filed under Supreme Court Rule 26.1(c), his attorney's motion to withdraw, the response of the Department of Services for Children, Youth and Their Families, Division of Family Services ("DFS"), and the response of the Office of Child Advocate ("OCA"), it appears to the Court that:

(1) The respondent below-appellant, Julian Lang-Larson ("the Father"), filed an appeal from the Family Court's October 26, 2022 order, terminating his

---

[1] The Court previously assigned a pseudonym to the appellant under Supreme Court Rule 7(d).

parental rights to his son ("the Child").[2]  On appeal, the Father's counsel ("Counsel") has filed an opening brief and motion to withdraw under Supreme Court Rule 26.1(c).  Counsel represents that she has made a conscientious review of the record and the law and found no meritorious argument in support of the appeal.  The Father has not submitted any points for the Court's consideration.  In response to Counsel's submission, DFS and OCA ask this Court to affirm the Family Court's termination of the Father's parental rights.  After careful consideration, this Court concludes that the Family Court's judgment should be affirmed.

(2)     The Child was born in 2010.  DFS first obtained custody of the Child in September 2017 because his mother was incarcerated and the Father had been arrested for domestic violence-related offenses involving a younger sibling of the Child.  The Father was deported to Mexico and did not appear in the dependency and neglect proceedings involving the Child.  In February 2019, the Family Court granted a petition for guardianship filed by non-relatives of the Child.

(3)     On September 7, 2021, DFS filed an emergency petition for custody of the Child.  DFS alleged that the guardians no longer wished to have guardianship of the Child, that the Child had lived with the Mother from June to August, that the Child could not live with the Mother where she was presently residing, and that there

_____

[2] The Family Court also terminated the parental rights of the Child's mother, who is not a party to this appeal.  We only recite the facts in the record as they relate to the Father's appeal.

2

were no willing and able relatives to care for the Child. The Family Court granted the petition.

(4) On September 8, 2021, the Family Court appointed Counsel to represent the Father. On September 14, 2021, the Family Court appointed an attorney and a court appointed special advocate ("CASA") to represent the Child.

(5) At the preliminary protective hearing on September 16, 2021, the Father did not appear, but Counsel did appear and stated that she was trying to reach the Father in Mexico. A DFS employee testified that the Child's guardians had contacted DFS in April and they advised that they were unable to continue caring for the Child. DFS had been unable to find another placement for the Child. The Child was doing well in his foster home and was in contact with the Father. The court rescinded the guardianship. As to the Father, the Family Court found that there was probable cause to believe the Child was dependent, that an award of custody to DFS was in the Child's best interests, and that DFS had made reasonable efforts to prevent the unnecessary removal of the Child from the home.

(6) On October 14, 2021, the Family Court held an adjudicatory hearing as to the Father. At the beginning of the hearing, Counsel advised that she was having difficulty reaching the Father and was attempting to enlist the aid of the Mexican embassy. Counsel was subsequently able to communicate with the Father via WhatsApp during a court recess. She reported that the Father spoke sufficient

3

English and that she was able to communicate with him. The Father was aware of the proceedings, willing to accept service, and waiving his right to an adjudicatory hearing. He was interested in reunification and willing to work on a case plan. A DFS employee testified that the Child had recently changed schools and was doing well in his foster home. The Family Court found that it was in the Child's best interests to remain in DFS custody. The Family Court also found that DFS was making reasonable efforts toward reunification.

(7) On November 4, 2021, the Family Court held a dispositional hearing as to the Father. The Father did not attend the hearing, but Counsel did. A DFS employee testified that she had been unable to reach the Father. She had initiated contact with a person at the Mexican Consulate in Philadelphia; that person was going to reach out to social services in Mexico. DFS had also received paperwork relating to the Father's deportation after he was arrested for domestic-violence related offenses.

(8) DFS had prepared a case plan for the Father. The elements of the Father's case plan included completion of mental-health, substance-abuse, and domestic-violence evaluations, obtaining and maintaining employment and providing proof of income, obtaining and maintaining appropriate housing, participation in the Child's medical and educational needs, and virtual visitation with the Child. The Father would be responsible for completing the necessary evaluations

4

in Mexico. English and Spanish versions of the case plan were admitted into evidence.

(9) A DFS employee testified that the Child was doing well. According to that employee, the Child did not want to move to Mexico. The Family Court approved the case plan for the Father. The Family Court found that it was in the best interests of the Child to remain in DFS custody and that DFS was making reasonable efforts toward reunification.

(10) The Family Court held a review hearing on January 27, 2022. The Father participated, with the assistance of a translator, via Zoom. The Child's therapist testified about his work with the Child. The Child's foster mother testified that the Child was doing well and communicating with the Father and other relatives. The Child sometimes spoke with the Father twice a week.

(11) A DFS employee testified that she spoke with the Father for the first time that day. He was unaware of the case plan. The DFS employee discussed the case plan with him and emailed English and Spanish versions of the plan to him. She also testified that social services in Mexico would need to evaluate the Father's home; she was trying to set that up through the Mexican Consulate. She and the CASA testified that the Child did not want to go to Mexico. The Family Court found that it was in the best interests of the Child to remain in DFS custody and that DFS was making reasonable efforts toward reunification.

(12) On March 9, 2022, DFS filed a motion to amend the permanency plan from reunification to termination of parental rights/adoption. On April 14, 2022, the court held a review hearing. The Father did not attend the hearing, but Counsel did. Counsel could not take a position on DFS's motion because she had been unable to maintain contact with the Father since the last hearing.

(13) The Child's therapist testified that the Child did not seem to consider living with his parents as a true option. He wanted a permanent family and was not interested in moving to Mexico. A DFS employee testified that the Mexican Consulate was attempting to reach the Father to arrange for a housing assessment. She also testified that the Father had not completed any of the necessary evaluations. At the end of the hearing, the Family Court adopted a concurrent permanency goals of (i) termination of parental rights for purposes of adoption and (ii) reunification. The Family Court also found that it was in the best interests of the Child to remain in DFS custody. The Family Court scheduled a termination of parental rights hearing for July 28, 2022.

(14) In preparation for the hearing and as requested by the Child's counsel, the Family Court interviewed the Child on June 7, 2022. During the interview, the Child said he talked with the Father on Facetime. The Child, who didn't speak Spanish, expressed fear about living in Mexico.

6

(15) The Family Court held a termination of parental rights hearing on July 28, 2022. The Family Court heard testimony from both parents, the Child's therapist, the Child's foster mother, a Children and Families First employee who was the foster care and adoption worker, two DFS employees, and the CASA. The testimony reflected that the Child felt distant from his parents and wanted to live with a stable family. The Child and the Father spoke twice a week. They communicated in English as the Child did not speak Spanish. The Father had twice sent money to the Child.

(16) The Father testified that his primary language was Spanish, but he understood 60%-70% of English. He worked in construction and owned a home. He admitted that he was deported from the United States after he was charged with domestic-violence related crimes. He claimed that he did not receive the case plan, but said he understood that he needed to address certain issues such as his mental health, domestic violence and substance abuse. He reached out to a doctor, but did not proceed further as he did not know what to do. A DFS employee testified that she sent the case plan to the Father in May and that she discussed the elements of the case plan with him in English, which he seemed to understand. The Child's attorney supported termination of the Father's parental rights.

(17)   On October 26, 2022, the Family Court issued a decision terminating the parental rights of the Child's parents.[3]  As to the Father, the Family Court found by clear and convincing evidence that the Father had failed to plan adequately for the Child's needs under 13 *Del. C.* § 1103(a)(5).  Although DFS had provided the Father with English and Spanish versions of the case plan by January 27, 2022, and discussed the case plan with him more than once, the Father had not obtained any of the required evaluations or attended any of the Child's educational or medical appointments.  There was no evidence, other than the Father's testimony, that the Father had safe and appropriate housing for the Child.  The Father had only attended two of the five hearings, even though notice of all the hearings was sent to his address.  If he had attended the hearings and had questions about the case plan, he could have raised them there.  He also had an attorney, who attended all of the hearings and could have been consulted about the case plan. The Family Court also found, by clear and convincing evidence, that the Child had previously been in DFS custody and that the Father had a history of dependency, neglect, abuse, or lack of care of the Child.

(18)   The Family Court next considered the best-interest factors under 13 *Del. C.* § 722, and found by clear convincing evidence that termination of the

---

[3] The first page of the decision incorrectly states that the Father did not attend the TPR hearing.

Father's parental rights was in the Child's best interests. Finally, the Family Court held that DFS had made reasonable efforts to reunify the family.

(19) On appeal, this Court reviews the Family Court's factual and legal determinations as well as its inferences and deductions.[4] We review legal rulings *de novo*.[5] We conduct a limited review of the Family Court's factual findings to assure that they are supported by the record and are not clearly wrong.[6] The Court will not disturb inferences and deductions supported by the record and the product of an orderly and logical reasoning process.[7] If the Family Court correctly applied the law, the standard of review is abuse of discretion.[8]

(20) The statutory procedure for terminating parental rights requires two separate inquires.[9] First, the Family Court must determine whether the evidence presented meets one of the statutory grounds for termination.[10] When the statutory basis for termination of parental rights is failure to plan adequately for the child's needs under Section 1103(a)(5) and the child is in DFS custody, there must be proof of a least one additional statutory factor under Section 1103(a)(5).[11] Second, the Family Court must determine whether termination of parental rights is in the best

---

[4] *Long v. Div. of Family Servs.*, 41 A.3d 367, 370 (Del. 2012).
[5] *Id.*
[6] *Powell v. Dep't of Servs. for Children, Youth and Their Families*, 963 A.2d 724, 731 (Del. 2008).
[7] *Id.*
[8] *CASA v. Dep't of Servs. for Children, Youth and Their Families*, 834 A.2d 63, 66 (Del. 2003).
[9] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).
[10] 13 *Del. C.* § 1103(a); *Powell*, 963 A.2d at 731.
[11] *Powell*, 963 A.2d at 731.

interests of the child.[12]  Both of these requirements must be established by clear and convincing evidence.[13]

(21)  The Father has not submitted any points for this Court's consideration on appeal.  Having considered the parties' briefs and the record on appeal, we conclude that the Father's appeal is wholly without merit.  There is ample evidence supporting the Family Court's termination of the Father's parental rights based on his failure to plan, that termination of the Father's parental rights was in the Child's best interests, and that DFS made reasonable reunification efforts.  We find no error in the Family Court's application of the law to the facts and no abuse of discretion in the Family Court's factual findings.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.  The motion to withdraw is moot.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

---

[12] *Id.*  The best-interest factors include: (i) the wishes of the parents regarding the child's custody and residential arrangements; (ii) the wishes of the child regarding his custodians and residential arrangements; (iii) the interaction and interrelationship of the child with his parents, grandparents, siblings, persons cohabitating in the relationship of husband and wife with a parent of the child, and any other residents of the household or persons who may significantly affect the child's best interests; (iv) the child's adjustment to his home, school, and community; (v) the mental and physical health of all individuals involved; (vi) past and present compliance by both parents with their rights and responsibilities to the child under 13 *Del. C.* § 701; (vii) evidence of domestic violence; and (viii) the criminal history of any party or any resident of the household. 13 *Del. C.* § 722(a).
[13] *Powell*, 963 A.2d at 731.